(No. 78812.— )

# THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. HENRY GRIFFIN, Appellant.

*Opinion filed September 11, 1997.—Rehearing denied
December 1, 1997.*

Richard E. Cunningham, of Chicago, for appellant.

James E. Ryan, Attorney General, of Springfield, and Richard A. Devine, State's Attorney, of Chicago (Arleen Anderson, Assistant Attorney General, of Chicago,

and Renee Goldfarb and Marie Quinlivan Czech, Assistant State's Attorneys, of counsel), for the People.

CHIEF JUSTICE FREEMAN delivered the opinion of the court:

Defendant, Henry Griffin, filed a second petition for post-conviction relief in the circuit court of Cook County pursuant to the Post-Conviction Hearing Act. 725 ILCS 5/122—1 et seq. (West 1994). The trial court dismissed defendant's petition without an evidentiary hearing. Defendant appeals directly to this court. 134 Ill. 2d R. 651(a). We affirm.

## BACKGROUND

In defendant's direct appeal, this court recited the details of his crimes. See People v. Griffin, 148 Ill. 2d 45, 49-52 (1992). We need not repeat those details here. Briefly, the record contains the following facts. Charles Ashley operated a major narcotics network. Ashley employed the victim, Carl Gibson, to manage the daily operations of the drug ring. Defendant and Darryl Moore were "enforcers" for Ashley.

Ashley suspected that the victim was a police informant. In the presence of James Allen, Ashley offered defendant $2,500 to kill the victim, and defendant accepted the offer. Defendant then obtained a handgun from Moore. Later that night, the victim, defendant, and Allen were in a car travelling on the Chicago Skyway. Allen drove the car, the victim sat in the front passenger seat, and defendant sat in the back seat. Defendant shot the victim four times in the back of the head, and dumped the victim's body on the Skyway's 73rd Street exit ramp. Defendant and Allen disposed of the car. Ashley subsequently paid defendant in cash and cocaine. Defendant was arrested approximately six weeks after the murder.

Defendant, Ashley, and Allen were jointly indicted

on various charges. The trial court severed their cases, but conducted their trials simultaneously. Defendant and Allen were tried before separate juries; Ashley chose a bench trial. The State's evidence against the three included defendant's confession and the testimony of Moore, which corroborated defendant's confession. At the close of his trial, defendant was convicted of murder, solicitation to commit murder, and conspiracy to commit murder. The trial court sentenced defendant to death.

Defendant's sentence was stayed pending direct appeal to this court. Ill. Const. 1970, art. VI, § 4(b); 134 Ill. 2d Rs. 603, 609(a). Before this court heard his appeal, defendant filed his first petition in the trial court seeking post-conviction relief. The trial court dismissed the petition without an evidentiary hearing. This court consolidated defendant's appeal from the dismissal of his first post-conviction petition with the appeal of his conviction and sentence. This court affirmed defendant's conviction and sentence, and the dismissal of his first post-conviction petition. *People v. Griffin*, 148 Ill. 2d 45 (1992). The United States Supreme Court subsequently denied defendant's petition for a writ of *certiorari. Griffin v. Illinois*, 507 U.S. 924, 122 L. Ed. 2d 684, 113 S. Ct. 1293 (1993), *reh'g denied*, 507 U.S. 1046, 123 L. Ed. 2d 502, 113 S. Ct. 1885 (1993).

Pursuant to leave of this court, defendant then filed this second petition for post-conviction relief. The trial court dismissed the petition without an evidentiary hearing. We will discuss additional relevant facts in the context of the issues raised on appeal.

## DISCUSSION

A proceeding brought under the Post-Conviction Hearing Act (Act) is not an appeal. Rather, it is a collateral attack on a judgment of conviction. The purpose of the proceeding is to resolve allegations that constitu-

tional violations occurred at trial, when those allegations have not been, and could not have been, adjudicated previously. The petitioner bears the burden to establish a substantial constitutional deprivation. *People v. Whitehead*, 169 Ill. 2d 355, 370 (1996); *People v. Mahaffey*, 165 Ill. 2d 445, 452 (1995).

The petitioner in a post-conviction proceeding is not entitled to an evidentiary hearing as of right. Rather, the Act permits summary dismissal of a nonmeritorious petition. The allegations in the petition, supported where appropriate by the trial record or accompanying affidavits, must show a substantial violation of constitutional rights. Determinations of the reviewing court on the prior direct appeal are *res judicata* as to issues actually decided. Issues that could have been presented on direct appeal, but were not, are deemed waived. Determinations of the trial court in a post-conviction proceeding will not be disturbed unless manifestly erroneous. *Whitehead*, 169 Ill. 2d at 365, 370-71; *Mahaffey*, 165 Ill. 2d at 452-53.

On appeal, defendant contends that he was denied his constitutional right to effective assistance of counsel. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. To establish a claim of ineffective assistance of counsel, a defendant must satisfy the familiar *Strickland* test. See *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). The test is composed of two prongs: deficiency and prejudice. First, the defendant must prove that counsel made errors so serious, and that counsel's performance was so deficient, that counsel was not functioning as the "counsel" guaranteed by the sixth amendment. A court measures counsel's performance by an objective standard of competence under prevailing professional norms. To establish deficiency, the defendant must overcome the strong presumption that the challenged action or lack of action might have

been the product of sound trial strategy. *People v. Sanchez*, 169 Ill. 2d 472, 487 (1996); *Mahaffey*, 165 Ill. 2d at 457-58; *People v. Flores*, 153 Ill. 2d 264, 283 (1992).

Second, the defendant must establish prejudice. The defendant must prove that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. The prejudice prong of *Strickland* entails more than an "outcome-determinative" test. The defendant must show that counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair. *Sanchez*, 169 Ill. 2d at 487; *Whitehead*, 169 Ill. 2d at 380-81; *Mahaffey*, 165 Ill. 2d at 458.

A court uses the *Strickland* analysis also to test the adequacy of appellate counsel. A defendant who contends that appellate counsel rendered ineffective assistance, *e.g.*, by failing to argue an issue, must show that the failure to raise that issue was objectively unreasonable and that, but for this failure, defendant's conviction or sentence would have been reversed. *Whitehead*, 169 Ill. 2d at 381; *Flores*, 153 Ill. 2d at 283.

A defendant must satisfy both prongs of the *Strickland* test. However, if the ineffective-assistance claim can be disposed of on the ground that the defendant did not suffer prejudice, a court need not decide whether counsel's performance was constitutionally deficient. *Mahaffey*, 165 Ill. 2d at 458; *Flores*, 153 Ill. 2d at 283-84.

In the present case, defendant contends he received ineffective assistance of counsel because: (1) appellate counsel failed to raise on direct appeal the issue of the trial court's refusal to hold a *Franks* hearing; (2) trial counsel failed to investigate and present evidence at defendant's fitness hearing; (3) trial counsel failed to waive a sentencing jury prior to trial; (4) appellate

counsel failed to raise on direct appeal the issue of the erroneous giving of additional jury instructions; (5) trial counsel failed to investigate and present evidence at defendant's death sentencing hearing; and (6) appellate counsel failed to raise on direct review the issue of whether defendant's death sentence was unreasonably disparate to the sentence of Ashley or Allen.

## I. *Franks* Hearing

Defendant first contends that he received ineffective assistance of counsel because his appellate counsel failed to raise on direct appeal the issue of the trial court's refusal to hold a *Franks* hearing. We note the State's concession that, since defendant was represented by the same counsel on direct appeal and on his first post-conviction petition, he is not barred from now attacking the effectiveness of appellate counsel. See *Flores*, 153 Ill. 2d at 281-82.

On August 8, 1984, Chicago Police Detective Michael Pochordo swore out an affidavit which was the basis for search warrants and arrest warrants for defendant and Allen, and an application for a telephone eavesdropping device (see 725 ILCS 5/108A—1 *et seq*. (West 1994)) for defendant. The affidavit included information from Darryl Moore that implicated defendant in the murder. The trial court approved the application and issued the warrants that day. The next day, an eavesdropping device was set up, Moore telephoned and spoke with defendant and, during that conversation, defendant implicated himself in the murder. Defendant was arrested while he was still on the telephone with Moore. See *Griffin*, 148 Ill. 2d at 49-50.

Defendant moved to quash his arrest and suppress his incriminating statements. Pursuant to *Franks v. Delaware*, 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978), defendant sought to attack the veracity of Detective Pochordo's affidavit, which was the basis of his ap-

plication for the telephone eavesdropping. The trial court denied defendant a *Franks* hearing.

Defendant contends that he was entitled to a *Franks* hearing to determine the veracity of Detective Pochordo's affidavit. In *Franks*, the United States Supreme Court recognized a limited right to challenge the affidavit supporting a search warrant. The affidavit is presumed valid. To obtain an evidentiary hearing, the defendant must make a substantial preliminary showing that false statements in the affidavit were made knowingly and intelligently or with reckless disregard for the truth, and that those false statements are necessary to establish probable cause. *People v. Edwards*, 144 Ill. 2d 108, 131 (1991); *People v. Eyler*, 133 Ill. 2d 173, 201 (1989). We note that the statutory requirement of "reasonable cause" in the Illinois eavesdropping statute is synonymous with the term "probable cause." *People v. Monoson*, 75 Ill. App. 3d 1, 9-10 (1979); accord *People v. Wright*, 56 Ill. 2d 523, 528-29 (1974).

"If the affidavit is insufficient to establish probable cause without the false material, the search warrant must be voided and the fruits of the search excluded." *Eyler*, 133 Ill. 2d at 201; accord *People v. Lucente*, 116 Ill. 2d 133, 147 (1987). However, it is settled "that if, after the alleged untruths in a warrant affidavit are excised, the remainder is sufficient to establish probable cause, no hearing is required on the defendant's motion, and suppression will not result." *Lucente*, 116 Ill. 2d at 145; accord *Eyler*, 133 Ill. 2d at 204.

In the present case, we conclude that, even with Moore's inculpatory references to defendant excised from Detective Pochordo's affidavit, the remaining allegations in the affidavit would have established probable cause and the other statutory requirements for authorization of the telephone eavesdropping. See *Griffin*, 148 Ill. 2d at 61-62 (Miller, C.J., specially concurring, joined by Freeman, J.).

It is settled that probable cause means simply that the totality of the facts and circumstances within the knowledge of the affiant when the warrant was sought was sufficient to warrant a person of reasonable caution to believe that the law was violated and evidence of it is on the premises to be searched. The complaint or affidavit need not show beyond a reasonable doubt that the warrant should be issued. In deciding the question of probable cause, the courts are not unduly technical. Rather, the probabilities considered are the factual and practical considerations of everyday life on which reasonable persons, not legal technicians, act. *People v. Free*, 94 Ill. 2d 378, 400 (1983); see *People v. Stewart*, 104 Ill. 2d 463, 475-76 (1984).

Detective Pochordo's affidavit, with Moore's inculpatory references to defendant excised, included the following information. Moore stated that when defendant and Allen arrived at Moore's apartment on the night of the murder to obtain a handgun, they arrived in a black 1983 or 1984 Chevrolet truck. That night, a bystander observed the victim entering a black van with two men in it in the vicinity of the victim's residence.

This information, read in a commonsense and realistic fashion, clearly established probable cause. Thus, defendant was not entitled to a *Franks* hearing. Since defendant was not entitled to a *Franks* hearing, he was not prejudiced by appellate counsel's failure to contest this issue on appeal. See *People v. Foster*, 168 Ill. 2d 465, 481 (1995). We cannot say that the trial court manifestly erred in dismissing this claim.

## II. Fitness Hearing

Defendant next contends that he received ineffective assistance of counsel because his trial counsel failed to investigate and present evidence at defendant's fitness hearing. On the day before jury selection, trial counsel told the court that, based on the entire time he was

involved in the case, including a number of conversations with defendant, counsel doubted whether defendant was fit to stand trial. Counsel requested a psychological evaluation of defendant, which the court granted. Dr. Gilbert Bogen gave defendant a psychological evaluation that day, and opined that defendant was fit to stand trial. Counsel requested a fitness hearing, which the trial court granted and scheduled for the next day.

At the fitness hearing, Dr. Bogen testified that he spoke to defendant for close to an hour. Dr. Bogen repeated his opinion that defendant was able to understand the nature of the offense with which he was charged, and was able to cooperate with counsel. Dr. Bogen also opined that defendant was sane at the time of the murder. At the close of the hearing, the court found that defendant was fit to stand trial.

Defendant argues that trial counsel was ineffective for: (1) failing to investigate defendant's fitness and request a psychological evaluation until the day before trial, and (2) failing to investigate and present available evidence at the fitness hearing. However, this court rejected these exact arguments on direct review. *Griffin*, 148 Ill. 2d at 56-58; see 148 Ill. 2d at 62-63 (Miller, C.J., specially concurring, joined by Freeman, J.). That holding is *res judicata*. See *Flores*, 153 Ill. 2d at 274.

Defendant also argues that his appellate counsel was deficient: (1) in presenting this issue on direct review, and (2) in failing to investigate and present additional available evidence and to raise the issue in the first post-conviction petition. This argument is not barred by *res judicata* and is cognizable in this second post-conviction petition. See *Flores*, 153 Ill. 2d at 281-82.

However, this argument is unavailing. We conclude that defendant fails the prejudice prong of the *Strickland* test. Thus, we need not address whether appellate counsel was deficient under the first prong. See *Eddmonds*, 143 Ill. 2d at 511-12.

Defendant's second post-conviction petition includes a report from Dr. William Hillman. Dr. Hillman's report was based on information that included defendant's mental health records, school and prison records, affidavits from defendant's relatives, and Dr. Hillman's psychological examination of defendant. Dr. Hillman diagnosed defendant as having several abnormal psychological conditions and mental disorders. He opined "that there was a serious doubt, at the time of trial, as to whether [defendant] was able to assist in his defense."

In Illinois, a defendant is presumed to be fit to stand trial, and will be considered unfit only if, because of the defendant's mental or physical condition, the defendant is unable to understand the nature and purpose of the proceedings against him or her, or to assist in his or her defense. Fitness speaks only to a person's ability to function within the context of a trial; a defendant may be fit to stand trial even though the defendant's mind is otherwise unsound. If a *bona fide* doubt of the defendant's fitness is raised, the trial court has a duty to hold a fitness hearing before proceeding further. *People v. Haynes*, 174 Ill. 2d 204, 226 (1996) (and authorities cited therein). Once the fitness question is raised, the burden falls on the State to establish a defendant's fitness by a preponderance of the evidence. *People v. Mahaffey*, 166 Ill. 2d 1, 18 (1995).

In the present case, the introduction of Dr. Hillman's report with its supporting information would not have created a reasonable probability that this court would have reversed the trial court's finding of defendant's fitness. See *Flores*, 153 Ill. 2d at 283. Initially, Dr. Hillman's ultimate opinion was only that there was a *bona fide* doubt as to whether defendant was fit to stand trial. Such a doubt only entitled defendant to a fitness hearing, which he received.

Also, much of Dr. Hillman's supporting information

was presented by appellate counsel on direct review. Dr. Bogen knew defendant's background information when he examined defendant. This information "was simply too remote in time to be relevant here and would not have been helpful to the judge in determining the defendant's competency to stand trial." *Griffin*, 148 Ill. 2d at 62-63 (Miller, C.J., specially concurring, joined by Freeman, J.). Even assuming that the trial court heard evidence that defendant had abnormal psychological conditions or mental disorders, such evidence would not have been determinative on the issue of fitness. We cannot say that the trial court manifestly erred in dismissing this claim.

### III. Sentencing Jury Waiver

Defendant next contends that he received ineffective assistance of counsel because his trial counsel failed to waive a jury for the death sentencing hearing *prior* to the guilt phase of the trial. The record shows that in the courtroom prior to *voir dire*, trial counsel initially stated that defendant wanted to waive a sentencing jury. The trial court then instructed counsel that defendant would have to tender a sentencing jury waiver. In chambers, however, trial counsel changed his mind, and asked that the jury be "death qualified." At the close of the guilt phase of the trial, however, counsel waived a jury for sentencing.

According to defendant, as a result of trial counsel's failure to waive a sentencing jury prior to trial, defendant's jury at the guilt phase of the trial was "death qualified." A death-qualified jury is a jury from which venirepersons have been excluded for cause based on their inability to set aside their views about the death penalty that would prevent or substantially impair the performance of their duties as jurors in accordance with their instructions and their oath. A prosecutor may remove such venirepersons according to the guidelines

set out in *Witherspoon v. Illinois*, 391 U.S. 510, 20 L. Ed. 2d 776, 88 S. Ct. 1770 (1968), as refined by *Wainwright v. Witt*, 469 U.S. 412, 83 L. Ed. 2d 841, 105 S. Ct. 844 (1985). *Buchanan v. Kentucky*, 483 U.S. 402, 407 n.6, 97 L. Ed. 2d 336, 346 n.6, 107 S. Ct. 2906, 2909 n.6 (1987).

Defendant argues that he had the "right to a jury free from death qualification," and that trial counsel's failure to afford him this right "deprived him of fundamental fairness and mandates a new trial." We note defendant's additional argument that his appellate counsel was ineffective for failing to raise this issue on direct appeal.

Defendant is correct that a defendant has the statutory right to waive a sentencing jury prior to trial. *People v. Erickson*, 117 Ill. 2d 271, 286-88 (1987). Further, this court has held that "[t]here is no justification for death-qualifying a jury which has nothing to do with sentencing." *People v. Kidd*, 147 Ill. 2d 510, 547 (1992).

Nonetheless, we conclude that this claim of ineffective assistance of counsel fails the second prong of the *Strickland* test. Assuming that defendant's trial counsel was deficient by failing to waive a sentencing jury prior to trial, thereby allowing defendant's jury to be death-qualified, such deficient performance did not render the trial fundamentally unfair or the jury's guilty verdict unreliable. See *Mahaffey*, 165 Ill. 2d at 458.

Concerning fundamental fairness, it is settled that the death qualification of a jury that determines guilt does not violate either the United States Constitution or the Illinois Constitution. *People v. Coleman*, 168 Ill. 2d 509, 549-50 (1995); *People v. Sanchez*, 115 Ill. 2d 238, 265-66 (1986). Further:

"[t]his court has held that even where a defendant waives a jury at the sentencing phase, as defendant did here, a jury that is questioned about the death penalty is still presumed to be a fair jury on the issue of guilt or innocence. (*People v. Erickson* (1987), 117 Ill. 2d 271, 292.)

Defendant has failed to muster any evidence to rebut this presumption." *People v. Boclair*, 129 Ill. 2d 458, 483 (1989).

Concerning the verdict's reliability, the evidence against defendant, which included his confession, was overwhelming. This distinguishes this case from *Kidd*, where there were sufficient trial errors to warrant a new trial. *Kidd*, 147 Ill. 2d at 547. Here, there is no reasonable probability that, but for trial counsel's alleged error, defendant's guilty verdict would have been different. See *People v. Page*, 155 Ill. 2d 232, 265-67 (1993).

We note that since defendant was not prejudiced by this alleged error at trial, then he was not prejudiced by appellate counsel's failure to raise this issue on direct review. See *Foster*, 168 Ill. 2d at 481. We cannot say that the trial court manifestly erred in dismissing this claim.

IV. Additional Jury Instructions

Defendant next contends that he received ineffective assistance of counsel because his appellate counsel failed to raise on direct review the issue of the erroneous giving of additional jury instructions. Defendant was indicted with Allen and Ashley on one count of intentional and knowing murder (Ill. Rev. Stat. 1983, ch. 38, par. 9—1(a)(1)) and one count of murder by creating a strong probability of death or great bodily harm (Ill. Rev. Stat. 1983, ch. 38, par. 9—1(a)(2)). Defendant was *not* charged with murder while attempting or committing a forcible felony (Ill. Rev. Stat. 1983, ch. 38, par. 9—1(a)(3)).

Defendant was also indicted on one count of aggravated kidnapping (Ill. Rev. Stat. 1983, ch. 38, par. 10—2(a)(3)). However, the charge was defective because it erroneously recited the elements of murder instead of the elements of aggravated kidnapping. The State entered a *nolle prosequi* on the aggravated kidnapping charge. However, over trial counsel's objections, defen-

dant's jury was instructed on felony murder based on aggravated kidnapping, and on the definitions of the predicate offenses of kidnapping and aggravated kidnapping. The jury returned a general verdict of guilty of murder.

Defendant contends that he did not receive a fair trial because the jury was instructed on crimes with which he was not charged. He also contends that reversal is required because, due to the general guilty verdict of murder, it cannot be shown whether the jury followed the correct instructions or the superfluous instructions. Defendant further contends that his appellate counsel was ineffective for failing to raise this issue on direct review. We note—and reject—the State's waiver argument. See *Flores*, 153 Ill. 2d at 281-82.

It is settled that under section 9—1(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1983, ch. 38, par. 9—1(a), now codified at 720 ILCS 5/9—1(a) (West 1994)), there is only one crime of murder and not three distinct offenses. Subsections (1), (2), and (3) each describe a defendant's mental state or conduct that must accompany the acts that cause the murder. *People v. Maxwell*, 148 Ill. 2d 116, 134 (1992), quoting *People v. Allen*, 56 Ill. 2d 536, 543 (1974). Each subsection describes a different means of committing the same crime.

In *Griffin v. United States*, 502 U.S. 46, 116 L. Ed. 2d 371, 112 S. Ct. 466 (1991), the United States Supreme Court held that reversal of a general verdict of guilty is not required where the evidence is insufficient to support one of several alternative means of committing the same crime, as set forth in the jury instructions.

"After *Griffin*, then, a general guilty verdict based on an instruction which includes different methods of committing the same offense in the disjunctive is grounds for reversal only where one alternative is legally defective, *i.e.*, fails to correctly state the law, and not where the flawed alternative is factually inadequate, *i.e.*, where the

evidence is insufficient to sustain that count." *People v. Griffin*, 247 Ill. App. 3d 1, 16 (1993).

In the present case, defendant's challenge to the use of the felony murder and aggravated kidnapping instructions is unavailing. Defendant does not claim that the instructions were erroneous or conflicting on an essential element of an offense. Those instructions correctly stated the law. Rather, defendant claims that the instructions were not supported by the evidence.

However, there was more than sufficient evidence to support the other two grounds on which the State sought to base a murder conviction. Indeed, the evidence was overwhelming. The evidence included: the recorded telephone conversation between defendant and Moore, in which defendant implicated himself in the murder; defendant's confession; and Moore's inculpatory testimony.

Of course, where the evidence is insufficient to support an alternative legal theory or basis of liability, it is generally preferable for a trial court to remove that theory from the jury's consideration. "The refusal to do so, however, does not provide an independent basis for reversing an otherwise valid conviction." *Griffin*, 502 U.S. at 60, 116 L. Ed. 2d at 383, 112 S. Ct. at 474.

Since this alleged error at trial does not require the reversal of defendant's conviction, defendant was not prejudiced by appellate counsel's failure to raise this issue on direct review. See *Foster*, 168 Ill. 2d at 481. We cannot say that the trial court manifestly erred in dismissing this claim.

### V. Death Sentencing Hearing

Defendant next contends that he did not receive effective assistance of counsel because trial counsel failed to investigate and present mitigation evidence at the death sentencing hearing. Defendant also contends that his appellate counsel was ineffective for failing to

investigate and present evidence in support of this issue on direct review. We note—and reject—the State's waiver argument. See *Flores*, 153 Ill. 2d at 281-82.

At the second phase of the death sentencing hearing, the State introduced as aggravation evidence defendant's lengthy criminal history, which included prior convictions for attempted robbery in 1965, robbery in 1972, federal mail theft and bank theft in 1972, unlawful use of a weapon in 1978, and two counts of possession of a controlled substance in 1982. The State also introduced all of the evidence adduced at the guilt phase of the trial.

In mitigation, trial counsel called two witnesses, defendant and Ida Powe. Defendant testified that he was 37 years old and had six children. Since 1974, he was a cocaine and heroin addict; his prior convictions were related to his drug addiction. He testified that he resided at a center for ex-convicts who were drug addicts. He also testified that, as a minor, he was placed in Kankakee State Hospital in 1962, from which he twice escaped and where he lived for approximately one year.

Ida Powe testified that she had known defendant since 1974. She also testified that she had never known defendant to act violently towards anyone, and that defendant did not have a reputation for violence in his community.

In his closing argument, trial counsel reargued defendant's innocence. He argued that there was insufficient evidence of guilt. Thus, according to trial counsel, because of the "cloud" on the conviction, it would be inappropriate to sentence defendant to death.

The death sentencing hearing was continued to a later date for the preparation of a presentence investigation report, which the trial court had at the time of sentencing. In addition to defendant's criminal record, the report contained information on defendant's per-

sonal and family background, educational history, and physical and mental health history. The report included information on defendant's cocaine and heroin addiction. The report also described defendant's relationships with his parents, siblings, wife, and children.

In this second post-conviction petition, defendant claims that trial counsel failed to investigate and introduce the following mitigation evidence: (1) defendant's school, mental health, and prison records; (2) Dr. Hillman's psychological evaluation; and (3) affidavits from three of defendant's sisters, a niece, and a nephew.

As previously noted, in reviewing a claim of ineffective assistance of counsel, a court accords much deference to trial counsel's judgment and strongly presumes that counsel's conduct falls within the wide range of reasonable professional assistance. Accordingly, counsel's strategic choices, made after investigating the law and the facts, are virtually unchallengeable. *People v. Perez*, 148 Ill. 2d 168, 186 (1992), quoting *People v. Franklin*, 135 Ill. 2d 78, 116-17 (1990).

Of course, counsel has a duty to investigate potential sources of mitigation evidence, or to have a reason not to make such an investigation. *People v. Ruiz*, 132 Ill. 2d 1, 27 (1989). If mitigation evidence exists, counsel has the duty to introduce it in support of the defendant. *Griffin*, 148 Ill. 2d at 63-64 (Miller, C.J., specially concurring, joined by Freeman, J.); accord *Hall v. Washington*, 106 F.3d 742, 749 (7th Cir. 1997), quoting *Kubat v. Thieret*, 867 F.2d 351, 369 (7th Cir. 1989).

However, it is equally settled that the failure to offer mitigation evidence at a death sentencing hearing is not itself sufficient to show that defense counsel was ineffective. Counsel's decision whether to present a particular witness is generally a strategic choice which cannot support a claim of ineffective assistance of counsel. *People v. Jones*, 144 Ill. 2d 242, 278 (1991).

In the present case, counsel's performance was clearly a strategic decision. As the special concurrence in the direct appeal observed:

> "The defendant had a lengthy criminal history, however, and he committed the murder charged here only two months after his parole from prison. Apparently believing that the defendant's personal history provided little, if any, mitigation, counsel chose to argue to the sentencing judge that the evidence of the defendant's guilt for this offense should not form the basis for a death sentence. Counsel's strategic decision is entitled to deference ***." *Griffin*, 148 Ill. 2d at 64-65 (Miller, C.J., specially concurring, joined by Freeman, J.).

We add that information on defendant's personal history was included in the presentence investigation report. Defense counsel cannot be faulted for failing to introduce mitigation evidence that was already contained in the report. See *People v. Hampton*, 149 Ill. 2d 71, 110 (1992).

Even assuming that trial counsel was deficient under the first prong of *Strickland*, defendant must still show prejudice under the second prong. In the context of a death sentencing hearing, a defendant must prove that there is a reasonable probability that, absent counsel's deficient conduct, the sentencer would have concluded that the balance of aggravating and mitigating circumstances did not warrant death. *Mahaffey*, 165 Ill. 2d at 466.

We conclude that there is no reasonable probability that, absent trial counsel's alleged deficiencies, the sentencer would have found that the mitigating circumstances preclude the imposition of the death penalty. Defendant confessed that he executed the victim for money and narcotics. His confession was corroborated by the other evidence introduced at trial. *Griffin*, 148 Ill. 2d at 49-52. Additionally, the State presented defendant's lengthy criminal history.

Defendant's proffered mitigation evidence in support

of his second post-conviction petition either is cumulative to evidence already introduced at trial or is not inherently mitigating. The trial court was already presented with information contained in defendant's school, mental health, and prison records through the presentence investigation report and defendant's mitigation testimony. Also, the court was aware of defendant's mental condition through Dr. Bogen's testimony at the fitness hearing.

Also, the testimony from defendant's family members would have gone essentially to defendant's troubled, disadvantaged childhood. This information was already presented through the presentence investigation report. The proffered additional testimony would have been cumulative and, further, not inherently mitigating. The testimony from defendant's family also would have essentially gone to defendant's family ties, and lack of a violent disposition. This information was already presented through the presentence investigation report and Powe's mitigation testimony. The additional proffered testimony would have been cumulative. See *Mahaffey*, 165 Ill. 2d at 467-68 (and cases cited therein).

Lastly, the post-conviction court in this appeal was the sentencer at defendant's trial. Attached to defendant's second post-conviction petition were supporting affidavits that described the proffered additional evidence. In dismissing the petition, the court stated that the introduction of this proffered evidence would not have changed defendant's sentence. Also, "the defendant has failed to show that a different closing argument would have produced a different result." *Griffin*, 148 Ill. 2d at 65 (Miller, C.J., specially concurring, joined by Freeman, J.). Since we conclude that defendant was not prejudiced by trial counsel's conduct on this issue, then we conclude also that he was not prejudiced by appellate counsel's alleged deficiencies. See *Foster*, 168 Ill.

2d at 481. We cannot say that the trial court manifestly erred in dismissing this claim.

## VI. Disparate Sentences

Lastly defendant contends that he received ineffective assistance of counsel because his appellate counsel failed to raise on direct review the issue of whether defendant's death sentence was unreasonably disparate to the sentences of Ashley and Allen. Defendant and Allen were tried before separate juries, and Ashley chose a bench trial. However, defendant and Allen each waived a sentencing jury; thus, the trial court sentenced all three. At the close of separate sentencing hearings, the trial court sentenced defendant to death, and sentenced Ashley and Allen each to a prison term of natural life.

We note that the appellate court upheld Allen's murder conviction and sentence. *People v. Allen*, 184 Ill. App. 3d 438 (1989). We also note that Ashley had terminal cancer when he was sentenced; he died while his appeal was pending in the appellate court.

It is settled that comparative proportionality review in death penalty cases is not required by the United States Constitution, and is not a feature of the Illinois death penalty statute. *People v. Jimerson*, 127 Ill. 2d 12, 54 (1989). Nonetheless, this court has the constitutional duty to determine whether a death sentence has been imposed arbitrarily or capriciously, or is unduly severe, considering the circumstances of the offense and the character and rehabilitative prospects of the defendant. To guarantee the individualized sentencing that the eighth amendment requires, this court has compared the defendant's death sentence to the sentence of a co-defendant or an accomplice. The court has focused on the nature of the offense, each individual's relative involvement, his character and background, and his criminal record and potential for rehabilitation. *People*

*v. Burt*, 168 Ill. 2d 49, 79-80 (1995); *People v. Bean*, 137 Ill. 2d 65, 133-35 (1990).

In the present case, defendant points to the following in arguing that his death sentence was unreasonably disparate to the natural life prison sentences imposed on Ashley and Allen. Generally, Ashley had been responsible for other violent acts and had victimized thousands through his drug ring. Specifically, Ashley was "the driving force behind the entire criminal episode at issue here" and is as culpable as defendant. Generally, Allen had a significant criminal record. Specifically, Allen played a crucial role as the driver in the victim's murder.

We conclude that defendant's death sentence was not unreasonably disparate to Ashley's and Allen's natural life prison sentences. When Ashley was sentenced, he was 67 years old and had terminal cancer; he had approximately six months to live. This is properly considered as mitigation evidence. See *McCleskey v. Kemp*, 481 U.S. 279, 304-06, 95 L. Ed. 2d 262, 286-87, 107 S. Ct. 1756, 1773-74 (1987). Defendant's death sentence was not disparate to Ashley's prison sentence because Ashley would soon die a natural death. As to Allen, defendant's conduct was more culpable. Although Allen played the necessary role of driver, defendant nonetheless was the shooter. Further, defendant killed for money. Thus, a more severe sentence for defendant was justified.

Since we do not find an unreasonable disparity between the sentences of defendant and his accomplices, then defendant was not prejudiced by appellate counsel's failure to raise this issue on direct review. See *Foster*, 168 Ill. 2d at 481. We cannot say that the trial court manifestly erred in dismissing this claim.

## CONCLUSION

This was not a perfect trial. However, a defendant is

entitled to a fair trial, not a perfect one. *People v. Royse*, 99 Ill. 2d 163, 170-71 (1983). Likewise, ineffective assistance of counsel refers to competent, not perfect, representation. *People v. Palmer*, 162 Ill. 2d 465, 476 (1994). Recognizing these axioms, *Strickland* requires only that a defendant receive a fair trial, *i.e.*, a trial free of errors so egregious that they probably caused the conviction. *Averhart v. State*, 614 N.E.2d 924, 929 (Ind. 1993).

In the present case, defendant was convicted of murder and sentenced to death based not on any alleged ineffective assistance of counsel, but rather on overwhelming evidence, which included his confession. We cannot say that the trial court manifestly erred in dismissing defendant's second post-conviction petition.

For the foregoing reasons, the order of the circuit court of Cook County is affirmed. The clerk of this court is directed to enter an order setting Tuesday, January 13, 1998, as the date on which the sentence of death entered in the circuit court is to be imposed. The defendant shall be executed in the manner provided by law. 725 ILCS 5/119—5 (West 1994). The clerk of this court shall send a certified copy of the mandate in this case to the Director of Corrections, the warden of Stateville Correctional Center, and the warden of the institution where defendant is now confined.

*Affirmed.*