**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (3d) 180262-U

Order filed November 18, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 13th Judicial Circuit, La Salle County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-18-0262 Circuit No. 17-CF-171 |
| PEDRO A. RODRIGUEZ, | ) ) ) | Honorable Howard C. Ryan Jr., |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE WRIGHT delivered the judgment of the court.
Justice O'Brien concurred in the judgment.
Justice Schmidt dissented.

_____

**ORDER**

¶ 1     *Held*:   The trial court committed plain error by instructing the jury that it could consider a witness's prior inconsistent statements as substantive evidence where the evidence at trial was closely balanced.

¶ 2     A La Salle County jury convicted defendant of three counts of felony theft relating to the knowing control of stolen property. On appeal, defendant argues a new trial is required because the trial court incorrectly instructed the jury regarding the substantive consideration of prior statements of a witness and committed error during *voir dire*. Defendant further asserts he is

entitled to a new trial due to the ineffective assistance of trial counsel. We reverse and remand for a new trial.

¶ 3                                                    I. BACKGROUND

¶ 4        On May 23, 2017, the State charged defendant by way of indictment with residential burglary (count I) (720 ILCS 5/19-3(a) (West 2016))[1] and three counts of felony theft (counts II-IV)[2] (720 ILCS 5/16-1(a)(4)(A) (West 2016)), based on the knowing control of stolen property after a prior conviction for residential burglary.

¶ 5        The undisputed evidence presented during defendant's jury trial indicated that three residential burglaries took place at the separate homes of Carmen Torres, Judith Ferguson, and Patricia Edgcomb (the victims) on August 24, 2015, December 28, 2016, and February 7, 2017, respectively. All three victims testified for the State. Each victim described the unique circumstances surrounding the discovery that their homes had been burglarized and items, including jewelry, were taken from their homes. Each victim also described the items of jewelry that had been taken from their homes without their permission.

¶ 6        In addition to describing details related to the burglary of her home, Edgcomb testified that she observed a gold-colored minivan parked near her home shortly before the burglary that

---

[1]Count I alleged that on or about February 7, 2017, defendant knowingly and without authority, entered into the dwelling place of Patricia and John Edgcomb, with the intent to commit theft.

[2]Count II alleged that on or about April 10, 2017, defendant, having been previously convicted of residential burglary, "knowingly exerted unauthorized control over certain stolen property of Patricia Edgcomb, being a ring with two crosses and diamonds in between the crosses *** under such circumstances as would reasonably induce the defendant to believe the property was stolen and with intent to deprive Patricia Edgcomb permanently of the use of the property." Count III alleged that on or about April 10, 2017, defendant, having been previously convicted of residential burglary, "knowingly exerted unauthorized control over certain stolen property of Judith Ferguson, being a hummingbird pendant *** under such circumstances as would reasonably induce the defendant to believe the property was stolen and with intent to deprive Judith Ferguson permanently of the use of the property." Count IV alleged that on or about April 10, 2017, defendant, having been previously convicted of residential burglary, "knowingly exerted unauthorized control over certain stolen property of Carmen Torres, being a silver heart pendant *** under such circumstances as would reasonably induce the defendant to believe the property was stolen and with intent to deprive Carmen Torres permanently of the use of the property."

took place on February 7, 2017. According to Edgcomb, she was not able to observe the driver. The other victims did not make similar observations regarding vehicles in their neighborhoods.

¶ 7        In April 2017, the victims met with officers from the Ottawa Police Department and/or the La Salle Police Department for the purpose of identifying the stolen jewelry that had been recovered by law enforcement. At trial, Torres identified People's exhibit No. 1 (a heart pendant) as an item of jewelry stolen from her home on August 24, 2015. Ferguson identified People's exhibit No. 5 (a hummingbird pendant) as an item of jewelry stolen from her home on December 28, 2016. Edgcomb identified People's exhibit No. 10 (a diamond ring) as an item of jewelry taken from her home on February 7, 2017.

¶ 8        Several police officers also testified for the State. The police officers described the nature of each individual crime scene related to the burglary they were assigned to investigate. Two of the crime scenes yielded no physical evidence, while the third crime scene yielded partial finger and palm prints. However, the State's case-in-chief did not include any physical evidence linking defendant to any one of the crime scenes.

¶ 9        One of the investigating officers, City of La Salle officer Mike Smudzinski, testified that in the early morning hours of April 10, 2017, he and other officers from multiple law enforcement agencies arrived at defendant's home, located at 1507 North Bloomington Street in Streator, Illinois. Defendant and his girlfriend, Ana Roldan, resided together at that address, but defendant was not present in the home that morning. The officers obtained Roldan's consent to search the residence with the assistance of a Spanish-speaking officer. Smudzinski also indicated the investigation revealed defendant's ownership of a gold Kia Sedona minivan.

¶ 10        City of La Salle officer Nicholas Bernal testified that he was part of the group of officers present at defendant and Roldan's home on April 10, 2017. On that date, Bernal observed a gold

3

Kia Sedona minivan parked outside of the residence.[3] Once inside the residence, Bernal located a jewelry box on the dresser in the main bedroom. This jewelry box contained a diamond ring, later identified by Edgcomb as her stolen diamond ring. Bernal identified People's exhibit No. 10 as the diamond ring he discovered in the jewelry box of defendant's bedroom.

¶ 11    According to Bernal's testimony, Bernal then unscrewed and opened a fixture, which he described as either an electrical outlet box or an air vent/grate, in the same bedroom. Inside the fixture, Bernal found two bags hanging by strings. Bernal discovered miscellaneous items of jewelry inside of the bags. Bernal identified People's exhibit Nos. 1 and 5 as the pendants he located within the bags.

¶ 12    Ana Roldan testified before the jury through a Spanish-language interpreter provided by the court. Roldan testified that on April 10, 2017, she resided with her boyfriend, defendant, at 1507 North Bloomington Street in Streator, Illinois. Roldan testified that defendant's gold minivan was parked at the residence that day. She also explained that she never drove the minivan.

¶ 13    Roldan acknowledged that the investigating officers discovered jewelry in her home on April 10, 2017. After having an opportunity to view People's exhibit No. 1 (Torres's heart pendant), People's exhibit No. 5 (Ferguson's hummingbird pendant), and People's exhibit No. 10 (Edgcomb's diamond ring), Roldan stated that she did not know where the items came from and indicated the items were not hers. Roldan stated that she did not bring the items into the home. During her testimony, Roldan denied any awareness that defendant was the person that brought the jewelry items into the home.

_____

[3]Bernal identified People's exhibit No. 14 as a photograph of the Kia Sedona minivan he observed.

¶ 14    Roldan explained to the jury that she participated in an interview at the Streator Police Department on April 10, 2017. She stated that Officer Landeros, who spoke Spanish, assisted her during this interview. Roldan denied telling Landeros during this interview that she was concerned about some of the items defendant brought into the residence. She denied telling Landeros that defendant told her he obtained the items from a garage sale or found them on the street. Roldan agreed that she had telephone conversations with defendant from the jail after the criminal charges arose but denied that defendant told her to memorize a letter defendant wrote for her during one of those conversations.

¶ 15    Roldan further testified that her nephew, whom she believed to be 24 years of age at the time of the trial, once lived with her and defendant for approximately four months. Roldan indicated that her nephew moved out two or three days before law enforcement searched her home on April 10, 2017. Roldan stated that her nephew had access to all areas of the home during his stay.

¶ 16    Next, the State called City of La Salle police officer Osvaldo Landeros to impeach Roldan's testimony with the prior inconsistent statements she provided to the police on April 10, 2017, and with the content of the phone conversations between Roldan and defendant originating at the jail. Defense counsel objected to Landeros's testimony on the grounds that defense counsel had "no idea about [Landeros's] qualifications to interpret the Spanish language." Defense counsel suggested that Roldan's statements should be transcribed into Spanish. Landeros could then interpret the Spanish transcript of her statements into English for the jurors. The trial court refused defense counsel's request to delay the trial to have recordings of Roldan's police interview and phone calls formally transcribed for review. The court indicated that defense counsel would be allowed to question Landeros about the officer's Spanish-speaking abilities.

¶ 17          Landeros testified that he was born in Mexico and learned to speak Spanish during the eight years he lived in Mexico prior to moving to the United States. Landeros stated that Spanish was his first language, which he spoke fluently and daily with friends and family. Landeros testified that he assisted in the video-recorded interview of Roldan at the Streator Police Department on April 10, 2017. The testimony regarding Roldan's statements on that date is documented below as follows:

"Q. Were you able to ask [Roldan] about certain items of property that was found in her house?

A. Yes.

Q. Did she tell you that she had been concerned about those items of property?

A. Yes. We did talk about 'em. She did mention that they were coming in the house. She didn't ask questions.

Q. She was concerned that the items were coming in, but she wasn't inquiring as to where they were coming from?

A. Correct.

Q. Is that fair to say?

A. Yes.

Q. Did she eventually say that she was told they were either coming from garage sales or on the street?

A. Yes.

Q. Now, have you had also [sic] a chance to listen to certain telephone calls between [Roldan] and the defendant, Pedro Rodriguez?

A. Yes, I have.

6

Q. Specifically directing your attention to a phone call that was made on October the 27th of 2017, was Ms. — or I'm sorry — was [Roldan] told to memorize a statement that she'd been given to her by the defendant, Pedro Rodriguez?

A. Yes.

Q. What was her reaction to that?

A. Her reaction — I listened to several calls. And leading up to the specific call that we're talking about, he mentioned having this letter memorized word-for-word. She then began crying and said, I don't know what you're getting me into.

Q. So she was concerned about having done that for him?

A. Yes.

Q. And what that might mean for her?

A. Exactly.

Q. I have no further questions."

¶ 18    Following Landeros's testimony, the State rested. The trial court denied defense counsel's motion for a directed verdict. The defense rested.

¶ 19    Prior to closing arguments, the court and counsel conducted a conference on jury instructions. During this conference, defense counsel did not object to People's jury instruction No. 9 that was based on Illinois Pattern Jury Instructions, Criminal, No. 3.11 (approved October 17, 2014) (hereinafter IPI Criminal No. 3.11). The trial court then read this instruction to the jury verbatim. The instruction informed the jury that while prior inconsistent statements are ordinarily only to be considered for the limited purpose of deciding the weight to be given to a witness's testimony, the jury could consider a witness's prior inconsistent statement as evidence without this limitation when the statement was accurately recorded by electronic means.

7

¶ 20     Following deliberations, the jury found defendant guilty of all three counts of felony theft by knowing control of stolen property and not guilty of residential burglary. The trial court sentenced defendant, who was eligible for an extended term, to six-year consecutive terms of imprisonment on counts II and III and a six-year concurrent term of imprisonment on count IV.

¶ 21     On December 1, 2017, several days after the conclusion of the jury trial, the State furnished audio recordings of telephone calls between Roldan and defendant that originated at the jail. The record reflects that counsel requested these recordings on July 1, 2017.

¶ 22     Defendant appeals.

¶ 23                                          II. ANALYSIS

¶ 24     On appeal, defendant requests a new trial on the grounds that the jury should not have been instructed that it could consider Roldan's prior recorded statements, which were not consistent with her trial testimony, as substantive evidence. Defendant acknowledges forfeiture of this issue. However, defendant urges this court to review his claim under the first prong of plain error. The first prong of plain error is established where "a clear and obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error[.]" *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007).

¶ 25     The outcome of this appeal is dictated by the State's concession that it was clear error for the trial court to instruct the jury that the recorded prior inconsistent statements could be considered as substantive evidence where such statements were not shown to have been accurately recorded by electronic means. Having confessed error, the State contends the evidence this jury received was not closely balanced and, on this basis, forfeiture applies.

8

¶ 26    Review of whether the evidence was closely balanced for purposes of the first prong of plain error requires this court to conduct a qualitative, common sense assessment of the evidence within the context of the case. *People v. Sebby*, 2017 IL 119445, ¶ 53; *People v. Belknap*, 2014 IL 117094, ¶¶ 50, 52. This analysis requires an assessment of the evidence on the elements of the charged offense or offenses, along with any evidence regarding the witnesses' credibility. *Sebby*, 2017 IL 119445, ¶ 53.

¶ 27    Turning to the elements of the offense of felony theft by knowing control of stolen property under section 16-1(a)(4)(A) of the Criminal Code of 2012, we note the State was required to prove that defendant obtained "control over stolen property knowing the property to have been stolen or under such circumstances as would reasonably induce [defendant] to believe the property was stolen" and defendant intended to "deprive the owner permanently of the use or benefit of the property." 720 ILCS 5/16-1(a)(4)(A) (West 2016).

¶ 28    It is undisputed that there was neither physical evidence nor eyewitness accounts linking defendant directly to the scenes of the burglaries. Similarly, there was no physical evidence that suggested defendant had physical contact with any of the items of jewelry seized by law enforcement from defendant's household. Specifically, the State did not introduce physical evidence tying defendant's DNA or defendant's fingerprints to the stolen jewelry.

¶ 29    The only thread of circumstantial evidence connecting defendant to the scene of the Edgcomb burglary was Edgcomb's observation of an unfamiliar vehicle, a gold minivan, parked in her neighborhood on the morning of February 7, 2017. Our review of the record indicates that the prosecution did not request Edgcomb to identify the photograph of defendant's minivan, People's exhibit No. 14, as the gold minivan she saw on February 7, 2017.

9

¶ 30        Here, the location of the stolen jewelry in defendant's household served as the State's primary evidence. Roldan testified at trial that the jewelry was not hers, she did not bring the jewelry into the home, and she did not know where the jewelry came from. Roldan denied any awareness that defendant brought the items into the home and testified that her nephew also had access to all areas of the home. If the jury found Roldan credible, two people other than Roldan, namely, defendant and Roldan's nephew, could have carried the jewelry into the home and placed the items where they were later found.

¶ 31        However, the State discredited its own witness, Roldan, with her prior statements. If the jury decided that Roldan's exculpatory testimony regarding her awareness and/or control over the stolen jewelry was not truthful, three people, Roldan, her nephew, or defendant, had the opportunity to place the jewelry in the main bedroom. The jury ultimately determined defendant knowingly obtained control over the stolen jewelry with the requisite intent, but the State's case was far from overwhelming.

¶ 32        In our view, while sufficient to sustain defendant's convictions, the evidence was closely balanced and dependent on the jury's assessment of Roldan's credibility. Since the State concedes it was error for the court to instruct the jury that Roldan's prior inconsistent statements could be considered substantively, this conceded error could have easily tipped the scales of justice in this case and resulted in the guilty verdict.

¶ 33        For these reasons, we reverse defendant's convictions and remand the case to the circuit court of La Salle County for a new trial. Our holding does not necessitate review of the other issues raised on appeal.

¶ 34                                III. CONCLUSION

¶ 35        The judgment of the circuit court of LaSalle County is reversed and remanded.

¶ 36    Reversed and remanded.

¶ 37    JUSTICE SCHMIDT, dissenting:

¶ 38    The majority accepts the State's concession that the jury should not have been instructed that it could consider Roldan's prior recorded inconsistent statements as substantive evidence. The majority then finds the error constitutes reversible error under the plain-error doctrine because the majority believes the evidence is closely balanced. Contrary to the majority's finding, the evidence in this case is not closely balanced.

¶ 39    In plain-error review, the burden of persuasion rests with defendant. *People v. Thompson*, 238 Ill. 2d 598, 613 (2010). As the majority recognizes, "a reviewing court must undertake a commonsense analysis of all the evidence in context" to determine whether the evidence is closely balanced. *People v. Belknap*, 2014 IL 117094, ¶ 50.

¶ 40    Applying this standard, the evidence in this case was not closely balanced. Police recovered stolen jewelry after a search of defendant's home. Officer Bernal found the jewelry in the "main bedroom" of defendant's home. The ring was in a jewelry box on the dresser, and the two pendants were hidden in bags behind an electrical outlet box. Roldan testified that only she and defendant lived in the home, but her nephew had been staying at the home for a period. It is reasonable to believe that defendant and Roldan likely shared the "main bedroom" in their own home. It makes sense then that defendant placed the stolen items in his own bedroom. Moreover, Edgecomb testified to seeing a gold colored minivan outside her home just prior to the burglary. Defendant's vehicle matched Edgcomb's description. Roldan testified that she did not drive the vehicle; there is no evidence that her nephew drove the vehicle either. In light of this, a common sense, qualitative appraisal of the evidence presented in this case confirms that the evidence was not closely balanced. Defendant drove his gold minivan to Edgomb's home and stole her ring.

11

Defendant also stole the jewelry from the two other victims. Defendant then hid the items in his bedroom.

¶ 41    The majority finds the evidence closely balanced in part on its belief that it is plausible that Roldan or her nephew stole the items. First, at trial, Roldan denied stealing the items. Second, it is hard to believe that Roldan's nephew would steal the items then hide the items in the "main bedroom" of defendant's home. It is also unlikely that Roldan's nephew would create an elaborate system to hide the stolen items without Roldan or defendant's knowledge. And, it makes no sense at all that Roldan's nephew would steal the items, then leave them behind when he moved out of the home days before the police searched it on April 10, 2017. The majority's speculation that it is possible that Roldan or her nephew stole the jewelry does not render the evidence closely balanced.

¶ 42    Defendant alternatively argues that his counsel provided ineffective assistance for failing to object to the admission of Roldan's prior recorded statements. However, defendant cannot establish prejudice for counsel's failure to object. The overwhelming evidence supports defendant's guilt. *People v. Graham*, 206 Ill. 2d 465, 476 (2003) (citing *People v. Griffin*, 178 Ill. 2d 65, 74 (1997)) ("[I]f an ineffective-assistance claim can be disposed of because the defendant suffered no prejudice, we need not determine whether counsel's performance was deficient.").

¶ 43    The majority does not reach defendant's other contentions of error given that it reverses and remands for a new trial on the first issue. However, defendant also contends that: (1) the trial court erred when it did not allow defense counsel to obtain a neutral, third-party translation of Roldan's Spanish interview and phone calls and (2) the trial court committed plain error by failing to properly admonish the potential jurors pursuant to Illinois Supreme Court Rule 431(b)

12

(eff. July 1, 2012). Even assuming these errors occurred, defendant failed to preserve the issues for review. As discussed above, the evidence is not closely balanced; defendant cannot show that counsel's deficiencies prejudiced him in any way. Consequently, the remaining two claims would not warrant reversal of defendant's convictions.

¶ 44  We should affirm the trial court.