Docket No. 84146–Agenda 2–November 1999.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. MARK JOHNSON, Appellant.

Opinion filed May 18, 2000.

JUSTICE BILANDIC delivered the opinion of the court:

Following a jury trial in the circuit court of Cook County, defendant, Mark Johnson, was convicted of murder and aggravated criminal sexual assault. The same jury determined that defendant was eligible for the death penalty and that there were no mitigating factors sufficient to preclude a sentence of death. Accordingly, the circuit court sentenced defendant to death. On direct appeal, we affirmed defendant’s convictions and sentence. 
People v. Johnson
, 146 Ill. 2d 109 (1991). The United States Supreme Court denied defendant’s petition for a writ of 
certiorari
. 
Johnson v. Illinois
, 506 U.S. 834, 121 L. Ed. 2d 65, 113 S. Ct. 106 (1992).

Defendant, through appointed counsel, subsequently filed a petition for post-conviction relief, as well as two supplemental petitions, arguing, 
inter alia
, that he was denied the effective assistance of trial counsel, that he was suffering from a mental disease or defect at the time of the offenses, and that he was unfit to stand trial. The State filed a motion to dismiss and a supplemental motion to dismiss, arguing, 
inter alia
, that defendant’s claims are barred by the doctrines of 
res judicata
 and waiver. During argument on the State’s motions, the issue of defendant’s fitness to participate in post-conviction proceedings was raised. The circuit court found no 
bona fide
 doubt of defendant’s fitness to proceed with post-conviction proceedings, but nonetheless conducted a hearing on that issue. At the same time, the circuit court conducted a retrospective fitness hearing to determine whether defendant was fit to stand trial.

The circuit court found that defendant is fit to proceed with post-conviction proceedings and that he was fit at the time of his trial. The circuit court also granted the State’s motions to dismiss and dismissed defendant’s post-conviction petition and supplemental petitions without a further evidentiary hearing. Because defendant was sentenced to death for the underlying murder conviction, defendant’s appeal from the dismissal of his post-conviction petition and supplemental petitions lies directly to this court. See 134 Ill. 2d R. 651(a).

For the reasons set forth below, we vacate the judgment of the circuit court, and remand for further proceedings.

BACKGROUND

A. Criminal Trial

Defendant’s trial and a discussion of the evidence presented against him are discussed in this court’s opinion on direct appeal. See 
People v. Johnson
, 146 Ill. 2d 109 (1991). We provide a brief summary here.

On the afternoon of November 26, 1985, C.L., defendant, and C.L.’s uncle, Willie Robinson, went to an apartment, from which C.L. had been evicted, to pack and remove her belongings. Robinson left the apartment twice to purchase alcohol. During his second absence, defendant, who had a knife, forced C.L. to disrobe, and tied her hands and feet. When Robinson returned, defendant grabbed him from behind and cut his throat. The two struggled, and defendant repeatedly stabbed Robinson.

During the next several hours, defendant forced C.L. to perform repeated acts of oral sex on him, between which he continued to cut Robinson’s throat. Defendant also raped C.L., urinated on her, forced her to lick the blood from the knife used on Robinson, and forced her to perform oral sex on Robinson, who was lying on the floor. Defendant left the apartment at 10 or 11 p.m., but returned a half-hour later for a few minutes and then left again. C.L. eventually freed herself and fled to a neighbor’s apartment where she called police.

On December 5, 1985, police arrested defendant on an unrelated rape charge. During a search of defendant in connection with this arrest, police recovered a knife that was consistent with the type of knife used to stab Robinson. While defendant was under arrest, police questioned him about the murder of Robinson and took a written statement, which was introduced at trial. Defendant’s statement generally corroborated C.L.’s testimony.

At trial, defendant argued that he was insane at the time of the offenses, focusing on the sadistic, brutal and bizarre nature of the crimes.

The jury was instructed on the defense of insanity and the verdict of guilty but mentally ill. The jury found that defendant was guilty of murder and aggravated criminal sexual assault. The same jury later found that defendant was eligible for the death penalty, and that there were no mitigating factors sufficient to preclude imposition of that sentence. The circuit court, therefore, sentenced defendant to death.

B. Post-Conviction Proceedings

On April 5, 1993, defendant, through appointed counsel, filed a petition for post-conviction relief. Defendant later filed two supplemental petitions for post-conviction relief. (For ease of discussion, we refer to defendant’s initial post-conviction petition, together with his supplemental petitions, simply as defendant’s post-conviction petition, in the singular.) In his post-conviction petition, defendant claimed that he was denied the effective assistance of counsel prior to trial, at trial, and at sentencing. Defendant also claimed constitutional deprivations based on improper jury instructions, improper psychiatric testimony as to defendant’s sanity, defendant’s unfitness at trial due to the ingestion of certain medication, and the trial court’s improper denial of defendant’s pretrial motions. Defendant further claimed that he was suffering from a mental disease or defect, or was insane, at the time of the offenses, and that he was unfit to stand trial. Lastly, defendant challenged the constitutionality of the death penalty statute.

In support of his post-conviction petition, defendant submitted copies of his records from the Psychiatric Institute of the Circuit Court of Cook County (Psychiatric Institute) and Cermak Health Services. Defendant also submitted his own affidavit, as well as affidavits from Dr. Michael Gelbort, a neuropsychologist; Dr. James R. Merikangas, a psychiatrist; Assistant Public Defender Shelton O. Green, who represented defendant at trial; and three family members.

During oral argument on the State’s motions to dismiss defendant’s post-conviction petition, the State argued that defendant’s claim that he had been suffering from a long-term mental illness was undermined by the absence of any claim by his post-conviction counsel that defendant was not fit to proceed with post-conviction proceedings. Upon subsequent questioning by the circuit court, defendant’s counsel indicated that there had been communication problems with defendant. The circuit court determined that a fitness hearing may be appropriate, and subsequently ordered that defendant be examined by the Psychiatric Institute. The circuit court also allowed defendant to be examined by Dr. Gelbort for the same purpose.

Dr. Gelbort later filed a supplemental affidavit with the circuit court in which he concludes that defendant is not fit to proceed with his post-conviction petition, but that with appropriate treatment, defendant might be competent within a 6- to 12-month period. Dr. Albert Stipes, a staff psychiatrist with the Circuit Court of Cook County Forensic Clinical Services (formerly the Psychiatric Institute), who examined defendant pursuant to the circuit court’s order, also submitted his written findings to the court. Dr. Stipes found that defendant is unfit to proceed with the post-conviction process, but that with treatment and medication, there is a reasonable probability that he will be fit to proceed within one year.

At the State’s request, the circuit court ordered a second evaluation of defendant to be performed by qualified personnel, other than those employed by the Psychiatric Institute. That evaluation was performed by Dr. Edward Mahoney, a clinical psychiatrist. Dr. Mahoney submitted two detailed forensic reports to the court, in which he ultimately concludes that defendant had the capacity in 1993 to assist his attorneys with his post-conviction petition, had he chosen to do so, and that defendant is competent to continue with post-conviction proceedings, provided defendant remains on psychotropic medication.

Beginning June 11, 1997, the circuit court commenced an evidentiary hearing as to defendant’s fitness to proceed with his post-conviction petition and defendant’s fitness at the time of his trial. At present, we consider only that evidence relating to defendant’s fitness to proceed with his post-conviction petition.

At the hearing, defendant called Dr. Stipes. Dr. Stipes testified that he examined defendant on January 10, 1996. Prior to the examination, he reviewed psychological reports from the Psychiatric Institute, as well as from outside agencies. One such report from 1978 indicates that defendant was diagnosed as paranoid schizophrenic and unfit to stand trial at that time. Dr. Stipes noted a lack of cooperation and negativism by defendant during the examination, but deferred diagnosis until he reviewed additional records.

These additional records indicated that in late December 1993, defendant suffered a psychotic breakdown and was placed on Prolixin Decanoate, an antipsychotic drug. He continued to receive Prolixin until November 22, 1995. These records also indicated that defendant reported experiencing auditory hallucinations in October 1995. During the course of his treatment, defendant was also prescribed Ativan, a tranquilizer; Elavil and Imipramine, antidepressants; and Cogentin, to reduce the side effects of the Prolixin. Earlier records indicated that in 1987 and 1988, defendant was prescribed Mellaril, another antipsychotic drug, and Sinequan, an antidepressant.

Dr. Stipes examined defendant again on March 1, 1996. In his opinion, defendant was suffering from schizoaffective disorder, a chronic mental disease that affects both thought and mood similar to schizophrenia, and which is characterized by confusion, paranoia, mood swings, delusions, and hallucinations. Dr. Stipes testified that defendant had marginal contact with reality, and that defendant’s paranoia and negativism, due to his mental illness, rendered him unable to cooperate with post-conviction counsel. Dr. Stipes based this conclusion on defendant’s history and his inability to cooperate with the examiner.

Defendant also called Dr. Gelbort. Dr. Gelbort testified that he evaluated defendant in mid-1993, in January 1996, and on June 10, 1997, the day before the hearing. The 1993 evaluation included the administration of a comprehensive battery of neuropsychological tests that revealed, among other things, an overall IQ of 75, falling within the borderline mentally deficient range of functioning, or the mildly mentally retarded range. In December 1994, Dr. Gelbort diagnosed defendant as suffering from paranoid schizophrenic disorder, a psychotic disorder characterized by delusional thinking, which is exacerbated by defendant’s neuropsychological deficits. Dr. Gelbort stated that defendant has exhibited a longstanding pattern of psychotic and bizarre behavior that predates 1993, and that defendant does not have the cognitive or emotional wherewithal to assist counsel in a meaningful manner with his post-conviction petition.

Finally, defendant called Dr. Merikangas, who testified regarding his May 21, 1993, examination of defendant. Based on this exam, and a review of the relevant medical records, Dr. Merikangas diagnosed defendant as suffering from paranoid schizophrenia and migraine headaches, with a history of traumatic brain injury, as well as borderline mental retardation. Dr. Merikangas described schizophrenia as a major mental illness and a lifelong disease, characterized by delusions, hallucinations, thought processes that are inconsistent with reality, and deterioration in self-care and ability to perform in society. Dr. Merikangas testified that he met with defendant in July 1997, just prior to testifying at defendant’s evidentiary hearing, and that his diagnosis remains unchanged. In his opinion, defendant is not able to proceed with his post-conviction petition because he is hostile, paranoid, uncooperative, unreliable and not thinking rationally. He also noted that at the time of the hearing, defendant was taking Haldol, a powerful antipsychotic drug in the same category as Prolixin, which he described as a “chemical straightjacket.”

Following the denial of the State’s motion for a finding of fitness, the State called Dr. Mahoney. Dr. Mahoney testified that he met with defendant on four occasions from June 1996 through May 1997. Two of the meetings were very brief, as defendant refused to cooperate. Based on the other two interviews and his review of defendant’s psychiatric records, Dr. Mahoney was of the opinion that, as of May 1997, defendant was able to proceed with his post-conviction petition, and that he was fit to proceed in 1993, when he first filed his petition. Dr. Mahoney testified that there was no evidence in the medical records of psychiatric decompensation at that time. Dr. Mahoney further testified that although defendant was being treated with psychotropic medication in January 1994, the time at which defendant signed his affidavit in support of his petition, defendant’s condition was “stabilized.”

Dr. Mahoney described defendant as lucid and congenial during their May 1997 interview. Defendant displayed a clear understanding of the basic framework of post-conviction proceedings, and how the current proceedings differed from his trial. Defendant also said that he understood the particular constitutional issues explained to him by his attorneys, and that he was aware of the issues being raised regarding his mental status. Although defendant initially said that he had made changes to his post-conviction petition, he later indicated that he chose instead to rely on the expertise of his attorneys in formulating his petition. Defendant also apologized for not being cooperative in the past, indicating that he was frustrated with the post-conviction proceedings and the number of evaluations, and that he had been advised by his attorneys to discuss his case only with them.

Dr. Mahoney agreed that defendant was suffering from paranoid schizophrenia, but stated that any lack of cooperation with counsel was defendant’s choice and was not the result of defendant’s mental illness. Dr. Mahoney also testified that an overall IQ score of 75 is considered borderline intellectual functioning, not borderline mental retardation, and that errors in the scoring of the IQ test administered to defendant through Dr. Gelbort’s office resulted in a score that underestimated defendant’s true intellectual functioning. Dr. Mahoney further testified that studies show that inmates who are housed in segregation units, such as defendant, need to stimulate themselves, often engaging in behaviors that others would regard as bizarre, and that segregation adversely affects cognitive functions, such as concentration and attention span, which are reflected in IQ test scores.

After considering the evidence, the circuit court found that defendant is fit to proceed with his post-conviction petition and that defendant was fit at the time of his trial. The circuit court ultimately dismissed defendant’s petition for post-conviction relief without a further evidentiary hearing, and denied defendant’s motion to reconsider.

ANALYSIS

A. Post-Conviction Hearing Act

The Post-Conviction Hearing Act (Act) (725 ILCS 5/122–1 
et seq.
 (West 1998)) provides a remedy to criminal defendants who claim that a substantial violation of their federal or state constitutional rights occurred at the proceedings which resulted in their convictions, when such a claim has not been, and could not have been, adjudicated previously. 
People v. Griffin
, 178 Ill. 2d 65, 72-73 (1997); 
People v. Brisbon
, 164 Ill. 2d 236, 242 (1995). A proceeding under the Act is not an appeal; it is a collateral attack on the prior judgment. 
Brisbon
, 164 Ill. 2d at 242. Issues that were decided on direct appeal are barred by the doctrine of 
res judicata
, and issues that could have been raised on direct appeal, but were not, are deemed waived. 
People v. Towns
, 182 Ill. 2d 491, 502-03 (1998); 
Griffin
, 178 Ill. 2d at 73.

A petitioner in a post-conviction proceeding is not entitled to an evidentiary hearing on a petition as of right. Rather, a hearing will be held only where the allegations of the petition, supported by the trial court record and accompanying affidavits, make a substantial showing of a violation of a constitutional right. 
People v. Hobley
, 182 Ill. 2d 404, 427-28 (1998); 
Griffin
, 178 Ill. 2d at 73. In determining whether to grant an evidentiary hearing, all well-pleaded facts in the petition and affidavits are taken as true. 
Towns
, 182 Ill. 2d at 503. A trial court’s determination following such an evidentiary hearing will not be disturbed on review unless manifestly erroneous. The sufficiency of the allegations contained in a post-conviction petition, however, are reviewed 
de novo
. 
People v. Coleman
, 183 Ill. 2d 366, 388-89 (1998).

B. Fitness to Proceed with Post-Conviction Petition

We consider first defendant’s argument that the evidence demonstrated that he was not fit to proceed with his post-conviction petition, and that the circuit court improperly allocated to him the burden of proof on this issue.

A defendant is presumed to be fit to stand trial, to plead, and to be sentenced. 725 ILCS 5/104–10 (West 1998). A defendant is also presumed to be fit at the time of post-conviction proceedings. 
People v. Owens
, 139 Ill. 2d 351, 362 (1990). However, when a 
bona fide
 doubt of a defendant’s fitness to proceed with post-conviction proceedings is raised, the court may order a psychological evaluation of the defendant and consider the matter at an evidentiary hearing. 
Owens
, 139 Ill. 2d at 365. Because the trial court is in the best position to observe a defendant’s conduct, whether a 
bona fide
 doubt of fitness to proceed exists is a matter that lies within the discretion of that court. Moreover, because a presumption of fitness attaches at the outset of post-conviction proceedings, the court may require a substantial threshold showing of incompetence to establish a 
bona fide
 doubt as to a defendant’s ability to consult with counsel. 
Owens
, 139 Ill. 2d at 362-63.

The level of competency required during post-conviction proceedings is less than that required at trial. A defendant is considered unfit to stand trial when, “because of his mental or physical condition, he is unable to understand the nature and purpose of the proceedings against him or to assist in his defense.” 725 ILCS 5/104–10 (West 1998). In contrast, a defendant is considered unfit to proceed with the post-conviction process when, because of a mental condition, he cannot communicate his allegations of constitutional deprivations to counsel, thus frustrating his entitlement, under the Act, to a reasonable level of assistance. 
Owens
, 139 Ill. 2d at 359-65.

The lower level of competency required at post-conviction proceedings, as opposed to trial, reflects a fundamental difference between the two proceedings. A post-conviction proceeding is not part of the criminal process. Rather, it is a collateral attack on the judgment of conviction and is civil in nature. 
Owens
, 139 Ill. 2d at 363. Further, in proceedings under the Act, counsel is appointed not to shield a defendant from the “prosecutorial forces” of the State, but to shape a defendant’s claims into the appropriate legal form for presentation to the court. Accordingly, if a defendant is competent to communicate allegations of constitutional violations to counsel, that defendant is competent to participate in post-conviction proceedings. 
Owens
, 139 Ill. 2d at 365.

In 
People v. Owens
, 139 Ill. 2d 351 (1990), this court held that an evidentiary hearing to determine a defendant’s fitness to proceed with a post-conviction petition should be conducted in accordance with the procedures set forth in section 5–2–3 of the Unified Code of Corrections (Code) (Ill. Rev. Stat. 1987, ch. 38, par. 1005–2–3, later codified at 730 ILCS 5/5–2–3 (West 1992)). At that time, section 5–2–3 governed hearings on a defendant’s fitness to be executed and provided, in relevant part, that the burden of proving a defendant unfit to be executed is on the defendant. Accordingly, under 
Owens
, the burden of proving a defendant unfit to proceed with a post-conviction petition is likewise on the defendant. Our legislature, however, has since repealed section 5–2–3 (see Pub. Act 88–350, eff. January 1, 1994), and has not adopted a statutory provision delineating procedures for raising and determining fitness for execution, or for determining fitness for post-conviction proceedings. Thus, before we consider whether the circuit court improperly allocated the burden of proof at the hearing to determine defendant’s fitness to proceed with his post-conviction petition, we must first determine where the burden of proof lies.

The State argued before the circuit court that defendant had the burden of proof at the fitness hearing. Before this court, however, the State maintains that it bore the ultimate burden of proving defendant fit to proceed with his post-conviction petition by a preponderance of the evidence, just as it does in cases where a defendant’s fitness for trial is raised (see 725 ILCS 5/104–11 (West 1998)). Defendant likewise maintains that the State had the ultimate burden of proof.

We agree with the parties’ positions on appeal that, once a 
bona fide
 doubt of a defendant’s fitness to proceed with a post-conviction petition is raised, the burden is on the State to prove that defendant is fit. In reaching this conclusion, we are guided by this court’s decisions in 
People v. Bender
, 20 Ill. 2d 45 (1960), and 
People v. McCullum
, 66 Ill. 2d 306 (1977).

In 
Bender
, we held that, in a pretrial sanity hearing, once there is evidence sufficient to raise a reasonable doubt of a defendant’s sanity, the burden is upon the State to prove defendant is sane. We explained:

“Let us assume that defendant is in fact unable to co-operate with counsel and present his case in a rational manner. It would be a strange rule, indeed, to impose upon him the burden of proving his own incompetence, for the very disability which he would be seeking to prove renders him incapable, either logically or legally, of sustaining the burden of proof.” 
Bender
, 20 Ill. 2d at 53-54.

We applied the same reasoning in the 
McCullum
 case, when we considered the constitutionality of section 5–2–1 of the Code (Ill. Rev. Stat. 1973, ch. 38, par. 1005–2–1(i)). At the time, section 5–2–1 placed upon the defendant the ultimate burden of proving unfitness to stand trial when the defendant had raised the issue. Relying on the same analysis employed in 
Bender
, we found section 5–2–1 unconstitutional. We also rejected the argument that a defendant who has raised a 
bona fide
 doubt of fitness to stand trial is presumptively capable of assisting counsel in marshaling the information and presenting the facts necessary to prove unfitness. 
McCullum
, 66 Ill. 2d at 313-14.

Although 
Bender
 and 
McCullum
 involved hearings to determine the defendants’ fitness at the time of their criminal trials, we believe the same rationale applies to a hearing to determine a defendant’s fitness to proceed with a post-conviction petition. We are not unmindful that post-conviction proceedings are initiated by the defendant and are fundamentally different from criminal proceedings initiated by the State. Nonetheless, we conclude, as we did in 
Bender
 and 
McCullum
, that it would be a “strange rule,” indeed, to impose upon a defendant the burden of proving unfitness to proceed with a post-conviction petition where the very disability the defendant seeks to prove may very well render the defendant incapable of sustaining the burden of proof. Accordingly, we hold that, once a 
bona fide
 doubt of a defendant’s fitness to proceed with a post-conviction petition is raised, the burden is upon the State to prove that the defendant is fit.

 Here, the circuit court found no 
bona fide
 doubt of defendant’s fitness, but determined that, given the gravity of the case, it would proceed to an evidentiary hearing. In the absence of a 
bona fide
 doubt, further proceedings were neither necessary nor proper. See 
People v. Eddmonds
, 143 Ill. 2d 501, 513 (1991) (holding that the circuit court’s finding of “some” doubt as to defendant’s fitness for trial is not a proper ground for granting post-conviction relief and ordering a fitness hearing). In any event, we find that a 
bona fide
 doubt of defendant’s fitness was raised.

From the time the issue of defendant’s fitness to proceed with his post-conviction petition was first raised, to the time the circuit court first set the matter for an evidentiary hearing, over 18 months had passed. During this time, the circuit court consistently maintained the view that no 
bona fide
 doubt of defendant’s fitness had been raised. However, the circuit court had before it Dr. Gelbort’s supplemental affidavit, as well as Dr. Stipes’ written evaluation, in which each doctor concludes that defendant is not fit. Dr. Gelbort states in his supplemental affidavit that defendant suffers from paranoid schizophrenia, and that defendant is unable to communicate rationally with his attorneys. Dr. Gelbort further states that defendant “still demonstrates the presence of paranoia, instances of poor contact with reality, misperceptions of questions and verbal information presented [to] him, intellectual and information processing difficulties/impairments, and delusions surrounding his personal history.” Dr. Stipes states in his evaluation that defendant is unable to cooperate with or assist counsel due to a severe disorder of thought and mood, and that “defendant shows evidence of marginal contact with reality.” The record reveals that the circuit court had not fully reviewed the findings of Drs. Gelbort and Stipes prior to setting the matter for a hearing. Thus, although the circuit court is in the best position to determine whether a 
bona fide
 doubt of a defendant’s fitness to proceed with a post-conviction petition has been raised (
Owens
, 139 Ill. 2d at 362), the circuit court here failed to consider the entirety of the record before it.

We now consider whether, as defendant claims, the circuit court misallocated the burden of proof. The record reveals a substantial amount of confusion on this issue. The circuit court initially expressed its agreement with the State that defendant bore the burden of proof, but later expressed its belief to the contrary. On the day the hearing commenced, 
both
 parties advised the court that the burden was on defendant to prove his unfitness to proceed with the post-conviction process. The circuit court expressed no disagreement. The State also argued that, in light of defendant’s burden, and in order to preserve its ability to move the court for a “directed finding” of fitness, defendant’s evidence must be presented first. This is, in fact, the order in which the hearing proceeded–defendant presented his witnesses first, following which the State moved for a finding of fitness, again arguing that the burden was on defendant. Only after the circuit court denied the State’s motion did the State present any evidence. After the State rested, defendant presented his closing argument. Immediately thereafter, and without hearing argument from the State, the circuit court ruled. During its brief oral ruling, the circuit court made no reference to the burden of proof. Based on this record, we conclude that the parties and the court erroneously proceeded at the fitness hearing with the understanding that the burden of proof was on defendant. See 
People v. Haynes
, 174 Ill. 2d 204, 234 (1996) (considering the circuit court’s comments as a whole in determining whether the court properly allocated, to the State, the burden of proving defendant’s fitness for trial).

The State argues, however, that a trial judge is presumed to have followed the fitness statute in effect at the time of the hearing. See 
People v. Bilyew
, 73 Ill. 2d 294, 300 (1978). Although this is true as a general proposition of law, it is not applicable here. At the time of the fitness hearing in this case, the statute to which 
Owens
 refers (Ill. Rev. Stat. 1987, ch. 38, par. 1005–2–3) had been repealed, and no reviewing court had yet to address the burden-of-proof issue. Thus, there was no statute or other statement of the law which we may presume the trial judge followed. Furthermore, the record affirmatively shows that the trial judge misallocated the burden of proof to defendant.

Finally, the State contends that defendant waived review of this issue by failing to raise the matter before the circuit court. We decline, however, to find waiver where, as here, both parties before the court, as well as the trial judge, all proceeded under an erroneous view of the law. See 
People v. Bedford
, 31 Ill. 2d 227, 229 (1964) (holding that defendant’s acquiescence in the misallocation of the burden of proof at pretrial fitness hearing was not a bar from asserting error as grounds for reversal on appeal). Our conclusion that the circuit court erred in its allocation of the burden of proof does not end our inquiry. We must determine whether such error may be deemed harmless. See 
People v. Strickland
, 154 Ill. 2d 489, 511-12 (1992) (applying harmless-error analysis to claimed error in allocation of proof at pretrial fitness hearing); 
Johnson
, 146 Ill. 2d at 137-38 (applying harmless-error analysis to jury instruction that improperly modified burden of proof).

Based on our review of the evidence, we cannot conclude that the circuit court’s error in misallocating the burden of proof was harmless. All four experts who examined defendant agreed that he was suffering from schizophrenia or a schizoaffective disorder. Three of the experts, Drs. Gelbort, Merikangas, and Stipes, concluded that defendant was not able to communicate rationally or effectively with post-conviction counsel. This conclusion was based on results obtained from the administration of various psychological, neurologic and psychiatric tests; a review of defendant’s psychiatric records, which demonstrated a long history of mental disturbances and treatment with a variety of medications, including antidepressants and antipsychotic drugs; and a combined total of eight examinations of defendant, spanning the period from May 1993 through July 1997.

Dr. Mahoney was alone in his opinion that, notwithstanding defendant’s mental illness, defendant was fit to proceed with his post-conviction petition. Dr. Mahoney based this conclusion on interviews with defendant in June 1996 and in May 1997, a review of defendant’s psychiatric records, and a review of his colleagues’ impressions. Although Dr. Mahoney probed defendant most extensively as to those factors bearing directly on defendant’s competence–his understanding of the post-conviction process, his understanding of the constitutional issues raised by his attorneys, and his participation in the formulation of his post-conviction petition–his testimony contains deficiencies. Unlike Dr. Merikangas, who met with defendant shortly before trial, Dr. Mahoney last examined defendant in early May 1997, and could not say whether defendant’s mental status had changed in the interim. Dr. Mahoney was also unaware of what medication defendant was taking at the time of the fitness hearing. Further, Dr. Mahoney admitted that schizophrenia can cause a lack of cooperation in a person suffering from this disorder. Indeed, although Dr. Mahoney attempted four examinations of defendant, defendant cooperated on only two occasions, and refused any testing by Dr. Mahoney.

We note, however, that the opinions of defendant’s expert witnesses likewise contain deficiencies. Dr. Gelbort testified in relevant part that defendant did not possess the “cognitive wherewithal” to proceed with his post-conviction petition. He explained that “cognitive wherewithal” refers to the defendant’s ability to understand how people get along with one another, what motivates interpersonal behavior, and what is common or appropriate behavior. A defendant’s fitness to proceed with the post-conviction process, however, is judged by the ability to communicate allegations of constitutional deprivations to counsel (see 
Owens
, 139 Ill. 2d at 365), not by a defendant’s understanding of interpersonal behavior. In addition, Dr. Gelbort was not able to describe with particularity the longstanding pattern of “bizarre” behavior on which he also based his opinion of defendant’s unfitness.

Dr. Merikangas’ opinion as to defendant’s unfitness is undermined, to some extent, by his testimony that it is impossible to know how much defendant understands, and that defendant can, in fact, proceed with “simple things” related to his post-conviction petition that do not require his active participation. Dr. Merikangas further testified that, while being medicated with Haldol, which defendant was taking at the time of the fitness hearing, defendant is capable of some rational thought regarding courtroom proceedings.

Similarly, Dr. Stipes’ opinion is called into doubt by his testimony that defendant was able to convey information that indicated he understood the original charges against him and that he had been to trial on those charges. Dr. Stipes’ opinion is further compromised by admissions on cross-examination that he had not reviewed defendant’s post-conviction petition, had never asked defendant whether he had assisted his counsel in the preparation of his post-conviction petition, and had not inquired further when defendant had indicated he would only speak to his attorneys about the post-conviction process.

In light of the foregoing evidence and the trial judge’s conduct, we cannot conclude that the misallocation in the burden of proof was harmless error. Although the State maintains that the circuit court simply chose to believe the testimony of Dr. Mahoney over the testimony of defendant’s experts, we cannot accept this conclusion, as it is equally plausible that the circuit court found that the evidence was closely balanced. In such a case, the court’s decision would be adverse to the party who bore the burden. As already determined, the circuit court misallocated this burden to defendant.

Because we find that the error in the allocation of the burden of proof at the hearing to determine defendant’s fitness to proceed with his post-conviction petition was not harmless, we vacate the circuit court’s judgment dismissing defendant’s post-conviction petition and remand this cause to the circuit court for further proceedings consistent with the views expressed herein. See generally 
Owens
, 139 Ill. 2d at 366-67. We need not, therefore, consider the remaining issues raised on appeal, and express no opinion as to the merits of the claims raised in defendant’s post-conviction petition.

CONCLUSION

For the reasons stated, the judgment of the circuit court is vacated and this cause is remanded to that court for further proceedings.

Circuit court judgment vacated;

cause remanded.