2019 IL App (2d) 170689-U
No. 2-17-0689
Order filed December 17, 2019

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Winnebago County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 01-CF-3338 |
| TIMOTHY CHATMAN, | ) ) ) | Honorable Joseph G. McGraw, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HUDSON delivered the judgment of the court.
Justices Jorgensen and Bridges concurred in the judgment.

**ORDER**

¶ 1    *Held*:    In recharacterizing defendant's "successive" postconviction petition as an initial one, the trial court did not recharacterize a pleading "labeled as a different action" and thus was not required to provide *Shellstrom* admonishments.

¶ 2    In 2017, defendant, Timothy Chatman, filed a motion for leave to file a petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)) from his convictions of two counts of aggravated battery with a firearm (720 ILCS 5/12-4.2(a)(1) (West 2000)) and a single count of armed robbery ( *id.* § 18-2(a)(2)).  Defendant designated the petition "Defendant's Petition for Successive Post Conviction Petition" but we will refer to it here as the

"2017 petition." The trial court summarily dismissed the petition. Defendant argues on appeal that the trial court recharacterized the 2017 petition as his first postconviction petition. Defendant contends that the summary dismissal was improper because the trial court did not notify him that it was recharacterizing his petition. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4      This is the fifth appeal stemming from defendant's convictions. In the first appeal, we affirmed those convictions. *People v. Chatman*, No. 2-03-1072 (2005) (unpublished order under Illinois Supreme Court Rule 23) (*Chatman I*). However, on October 15, 2003, while *Chatman I* was pending, a petition was filed seeking relief under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2002)) (2003 petition). The trial court improperly dismissed the 2003 petition on the incorrect belief that the pending appeal divested the court of jurisdiction over that petition. On June 6, 2005, defendant filed a postconviction petition (2005 petition). On June 24, 2005, we issued our mandate in *Chatman I*. Prior to ruling on the 2005 petition, the trial court recognized its error in dismissing the 2003 petition. The court reinstated that petition but notified defendant in writing that it intended to recharacterize it as a postconviction petition and that defendant would be given an opportunity to amend the petition. The court advised defendant that "any future post-conviction petitions that [he] might file after the Court's ruling on any amended post-conviction petition which the Court is *now* giving the Defendant leave to file, will be subject to the restrictions of filing successive post-conviction petitions as detailed in 725 ILCS 5/122-1(f)." (Emphasis in original.) Eventually, the trial court summarily dismissed the 2003 petition and the 2005 petition. In the second appeal, we reversed the summary dismissal of the 2005 petition, and we remanded for further proceedings under the Act. *People v. Chatman*, No. 2-06-0102 (2007) (unpublished order under Illinois Supreme Court Rule 23) (*Chatman II*).

¶ 5      The State moved to dismiss the 2005 petition and the trial court granted the motion.  In defendant's third appeal (*People v. Chatman*, 2012 IL App (2d) 100710-U (*Chatman III*)), defendant sought review of the dismissal of the 2005 petition.  The Office of the State Appellate Defender was appointed to represent him, but appellate counsel moved to withdraw.  We denied the motion without prejudice because our review of the record led us to suspect that the 2005 petition was filed not by defendant but by his father, who was not an attorney.  Appellate counsel subsequently filed a brief seeking to have the case remanded to the trial court to determine who filed the 2005 petition.  We remanded the case to the trial court for that purpose, reasoning as follows:

> "In order 'to protect litigants against the mistakes of those ignorant of the law and the schemes of the unscrupulous, and to protect the court itself in the administration of its proceedings from those lacking requisite legal skills,' a nonattorney's actions in representing another in a legal proceeding are usually considered a nullity. [Citation.]  The rule will be relaxed when application would defeat its purpose. [Citation.]  However, assuming for the moment that our suspicions are correct—that filing the petition was the unilateral act of defendant's father and cannot meaningfully be ascribed to defendant himself—we see no reason to relax the rule.  Ordinarily a criminal defendant is afforded only one opportunity to seek relief under the Act [citation], so however well-intentioned defendant's father may have been, he did defendant no favor by usurping and squandering that opportunity by filing a petition that may fairly be said to have had no real chance of securing any relief for defendant." *Id.* ¶ 7.

¶ 6      On remand, the trial court found that defendant's father filed the 2005 petition.  Based on that finding, the trial court struck the petition.  Defendant appealed, and the Office of the State

Appellate Defender was again appointed to represent him. Again, appellate counsel moved to withdraw. This time, we granted the motion and affirmed the order striking the 2005 petition. *People v. Chatman*, No. 2-12-1153 (2013) (unpublished summary order under Illinois Supreme Court Rule 23) (*Chatman IV*).

¶ 7 This brings us to the 2017 petition. The trial court's written order summarily dismissing that petition stated as follows:

"The Court has received and reviewed a Motion for Leave to File Successive Post Conviction Pursuant to 725 ILCS 5/122-1(f) and a proposed petition that is styled Defendant's Petition for Successive Post Conviction Petition. The Court finds that this is not a successive petition, as the earlier post-conviction pleading was filed by defendant's father, who is not a lawyer and not empowered to file anything for the defendant. Therefore, the Court treats the current petition as an initial petition. The Court finds that the petition is frivolous and patently without merit, and that it does not state the gist of a constitutional claim."

Defendant filed a timely notice of appeal.

¶ 8                                    II. ANALYSIS

¶ 9 We begin with a summary the relevant principles governing postconviction proceedings. Our supreme court has stated as follows:

"The Act [citation] provides a remedy for incarcerated defendants who have suffered a substantial violation of their constitutional rights at trial. Under the Act, a postconviction proceeding contains three stages. At the first stage, the circuit court must independently review the postconviction petition, without input from the State, and determine whether it is 'frivolous or is patently without merit.' [Citation.] If the court

makes this determination, the court must dismiss the petition in a written order. [Citation.] If the petition is not dismissed, the proceedings move to the second stage. [Citation.]

At the second stage, counsel is appointed to represent the defendant, if he is indigent [citation], and the State is permitted to file responsive pleadings [citation]. The circuit court must determine at this stage whether the petition and any accompanying documentation make a substantial showing of a constitutional violation. [Citation.] If no such showing is made, the petition is dismissed. If, however, the petition sets forth a substantial showing of a constitutional violation, it is advanced to the third stage, where the circuit court conducts an evidentiary hearing [citation]." *People v. Johnson*, 2018 IL 122227, ¶¶ 14-15.

A proceeding under the Act is collateral to the proceeding in which the conviction was entered. *People v. Johnson*, 191 Ill. 2d 257, 268 (2000).

¶ 10 Section 122-1(f) of the Act (725 ILCS 5/122-1(f) (West 2016)) provides:

"Only one petition may be filed by a petitioner under this Article without leave of the court. Leave of court may be granted only if a petitioner demonstrates cause for his or her failure to bring the claim in his or her initial post-conviction proceedings and prejudice results from that failure. For purposes of this subsection (f): (1) a prisoner shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings; and (2) a prisoner shows prejudice by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process."

¶ 11 Defendant contends that the trial court erred when it summarily dismissed the 2017 petition. Defendant maintains that the trial court recharacterized that petition by treating it as his

first petition. According to defendant, the trial court was therefore required to follow the procedure outlined in *People v. Shellstrom*, 216 Ill. 2d 45 (2005). Defendant argues that, because the trial court failed to do so, the summary dismissal of the 2017 petition must be reversed. The State argues, *inter alia*, that the trial court did not recharacterize defendant's petition as a "different action" (*id.* at 57*)*and that *Shellstrom* is therefore inapplicable. We agree with the State.

¶ 12    The defendant in *Shellstrom* filed a document entitled " 'Motion to Reduce Sentence, Alternatively, Petition for Writ of Mandamus to Order Strict Compliance with Terms of Guilty Plea.' " *Id.* at 47. The trial court treated the document as a postconviction petition and summarily dismissed it. *Id.* Referring to its decisions in *People v. Pinkonsly*, 207 Ill. 2d 555, 566 (2003), and *People ex rel. Palmer v. Twomey*, 53 Ill. 2d 479, 484 (1973), the *Shellstrom* court "reaffirm[ed] that, where a *pro se* pleading alleges a deprivation of rights cognizable in a postconviction proceeding, a trial court may treat the pleading as a postconviction petition, even where the pleading is labeled differently." *Shellstrom*, 216 Ill. 2d at 51, 52-53. The *Shellstrom* court "reject[ed] the argument that a clearly labeled *pro se* pleading must be treated in accordance with its label, regardless of the substance of the pleading." *Id.* at 53.

¶ 13    The *Shellstrom* court held, however, that the trial court must notify the defendant if it plans to treat the pleading as one filed under the Act. The court followed the United States Supreme Court's reasoning in *Castro v. United States*, 540 U.S. 375 (2003). In that case, the Court treated what was labeled a motion for a new trial as a motion for *habeas corpus* relief and then denied the recharacterized motion on the merits. *Id.* at 378. When the defendant later filed what *he* called a *habeas corpus* motion, the trial court dismissed the motion on the basis that it did not satisfy one of the requirements for filing a second or subsequent *habeas corpus* motion. *Id.* at 378-79. The

Court adopted a restriction that nine circuits of the United States Court of Appeals had placed on recharacterization. As the Court noted:

> "Those Circuits recognize that, by recharacterizing as a first [*habeas corpus*] motion a *pro se* litigant's filing that did not previously bear that label, the court may make it significantly more difficult for that litigant to file another such motion. They have consequently concluded that a district court may not recharacterize a *pro se* litigant's motion as a request for [*habeas corpus*] relief *** unless the court first warns the *pro se* litigant about the consequences of the recharacterization, thereby giving the litigant an opportunity to contest the recharacterization, or to withdraw or amend the motion." *Id.* at 382.

The Court ruled that, when a court recharacterizes a *pro se* litigant's motion as a first *habeas corpus* motion, the court must "must notify the *pro se* litigant that it intends to recharacterize the pleading, warn the litigant that this recharacterization means that any subsequent [*habeas corpus*] motion will be subject to the restrictions on 'second or successive' motions, and provide the litigant an opportunity to withdraw the motion or to amend it so that it contains all the [*habeas corpus*] claims he believes he has." *Id.* at 383.

¶ 14    The *Shellstrom* court noted that the same concerns are present when a trial court ignores the label on a pleading and treats it as a first petition under the Act. The *Shellstrom* court thus invoked its supervisory authority to hold that a similar notification must be given "when a circuit court is recharacterizing as a first postconviction petition a pleading that a *pro se* litigant has labeled *as a different action cognizable under Illinois law*." (Emphasis added.) *Shellstrom*, 216

Ill. 2d at 57. Here, defendant labeled the 2017 petition as a successive postconviction petition.[1] The outcome of this appeal depends on whether, for purposes of *Shellstrom*, a defendant's first postconviction petition is a "different action" than a second or subsequent one. We conclude that it is not.[2]

¶ 15     In arguing that a second or subsequent postconviction proceeding is a "different action" than the first one, defendant seizes upon a procedural difference, not a substantive one: the requirement of cause and prejudice that is a prerequisite to filing a second or subsequent petition. However, considering the reasoning behind *Shellstrom*'s notification requirement, we conclude that the *Shellstrom* court did not view the cause-and-prejudice requirement as creating a new type of action. The notification requirement was designed to alert defendants to, and allow them to avoid, the effects of failing to raise all claims cognizable under the Act. To that end, the trial court must warn the defendant that "recharacterization means that any subsequent postconviction petition will be subject to the restrictions on successive postconviction petitions." *Shellstrom*, 216 Ill. 2d at 57. Clearly, that warning serves no purpose where the defendant seeks to file what is nominally a successive postconviction petition. Whether or not the trial court recharacterizes the petition, the consequences will be identical. In either case, the defendant must clear the cause-and-prejudice hurdle in order to raise any new claims in a subsequent petition. There is no more

---

[1] Granted, he did so with the cumbersome title "Defendant's Petition for Successive Post Conviction Petition."

[2] Of course, a first and a second postconviction petition initiate different actions for other purposes at least in the sense that the actions are independent of each other.

reason to warn the defendant of that possibility when he or she files a successive petition than there is when he or she files the first petition.[3]

¶ 16    In determining whether *Shellstrom* applies here, we must consider *Shellstrom*'s *ratio decidendi*.  *Kelley v. Sheriff's Merit Comm'n of Kane County*, 372 Ill. App. 3d 931, 934 (2007).  It has been observed:

> " 'The *ratio decidendi* of a case is 'the principle of law which is the basis of the actual decision and therefore, by virtue of the doctrine of *stare decisis*, the principle which subsequent courts, faced with a set of facts indistinguishable in any material particular from those in the precedent case, must apply to the decision of the subsequent case also.' [Citation.]  *** [T]o determine the *ratio decidendi* of a case, a court must ascertain (1) what facts were considered material by the court in the prior case, and (2) 'what proposition of law justified that decision on these material facts.' [Citation.]' "  *Id.* (quoting *Panchinsin v. Enterprise Cos.*, 117 Ill. App. 3d 441, 444 (1983)).

¶ 17    *Shellstrom*'s *ratio decidendi* is that a defendant is entitled to notice of the importance of raising all claims cognizable under the Act.  A defendant who files what is ostensibly a successive postconviction petition is already on notice because, no matter how many petitions the defendant

---

[3] Of course, the limitations on successive petitions apply even though there will typically be no one to explain the cause-and-prejudice requirement to the defendant.  Here, defendant had the benefit of the *Shellstrom* notice he received when the trial court recharacterized the 2003 petition.

has already filed, the cause-and-prejudice test will apply to the next one. Thus, *Shellstrom*'s *ratio decidendi* does not bring this case within the scope of its holding.

¶ 18 At oral argument, defendant contended that, because he believed he was filing a successive postconviction petition subject to the rigors of the cause-and-prejudice test, he might have omitted claims that could have been raised in an original petition. But the notion that *Shellstrom* notice is necessary in such circumstances turns *Shellstrom* on its head. *Shellstrom* notice is designed to alert a defendant to the possible adverse consequences of recharacterizing a pleading as an initial postconviction petition. In contrast, the rule defendant advocates would require the trial court to advise him of the potential *advantages* of recharacterization. That is something that *Shellstrom* simply does not require.

¶ 19 We thus conclude that, in recharacterizing defendant's ostensibly successive postconviction petition, the trial court did not recharacterize "as a first postconviction petition a pleading that a *pro se* litigant has labeled as different action cognizable under Illinois law" (*Shellstrom*, 216 Ill. 2d at 57. Thus, *Shellstrom* notice was not necessary.

¶ 20                                  III. CONCLUSION

¶ 21 For the foregoing reasons, the judgment of the circuit court of Winnebago County is affirmed.

¶ 22 Affirmed.