2020 IL App (1st) 162845
No. 1-16-2845

SIXTH DIVISION
March 27, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

---

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

---

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| | ) | Appeal from the |
| | ) | Circuit Court of Cook County. |
| Respondent-Appellee, | ) | |
| | ) | |
| v. | ) | 08 CR 12235 |
| | ) | |
| ANDRE PATTERSON, | ) | |
| | ) | Honorable Michele M. Pitman, |
| | ) | Judge Presiding. |
| Petitioner-Appellant. | ) | |

---

JUSTICE CONNORS delivered the judgment of the court.
Presiding Justice Mikva and Justice Harris concurred in the judgment and opinion.

**ORDER**

¶ 1    *Held:* Defendant knowingly and intelligently waived the right to postconviction counsel, and the trial court did not abuse its discretion by denying defendant's request for a fitness evaluation.

¶ 2    Defendant, Andre Patterson[1], appeals from the dismissal of a *pro se* petition filed

pursuant to Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1, *et seq.* (West 2014)).

---

[1] Defendant states that defendant's name is now Janiah Monroe, and that defendant identifies as female. Both parties refer to petitioner as "Andre Patterson" in their briefs "for the sake of consistency with the record." We note that there is no documentation in the record indicating that defendant's name was legally changed.

Defendant's petition was dismissed as untimely and without merit. On appeal, defendant contends that defendant did not knowingly and intelligently waive the right to postconviction counsel, and that the trial court abused its discretion by refusing defendant's request for a fitness evaluation. For the following reasons, we affirm.

¶ 3                                    BACKGROUND

¶ 4      Following a December 2005 shooting in a parking lot in Calumet City, defendant, who was 16 years old at the time, was arrested and charged with attempted murder. Defendant pled guilty to attempted murder and received a 12-year sentence.

¶ 5      On February 20, 2014, defendant filed a *pro se* postconviction petition raising constitutional challenges to the automatic transfer provision of the Juvenile Court Act (705 ILCS 405/5-130(1)(a) (West 2014)), and to the truth-in-sentencing statute (730 ILCS 5/3-6-3(a)(ii)(2) (West 2014)).

¶ 6      A year later, in February 2015, defendant filed a second *pro se* postconviction petition, alleging various constitutional deprivations related to defendant's mental health. In April 2015, the circuit court learned of the February 2014 petition, advanced it to second-stage proceedings, and appointed counsel.

¶ 7      An assistant public defender appeared for defendant at a May 2015 status hearing. The public defender described the *pro se* claims as allegations pursuant to *Miller v. Alabama*, 567 U.S. 460 (2012).

¶ 8      In July 2015, the public defender notified the court that she had researched the *Miller* issue and spoken to defendant. She learned that defendant had filed a second *pro se* petition in February 2015. The case was continued.

¶ 9      On September 14, 2015, defendant filed two *pro se* documents. The first was a motion to dismiss counsel and proceed *pro se*. In that motion, defendant stated, "only [I] can properly amend [my] petition to adequately represent [my] contentions," and asked for "a copy of the trial transcripts and common law records." Defendant also asked for "a stamped filed copy of this motion." The second was an amended postconviction petition, which claimed that defendant was denied substantive due process because defendant was "mentally unfit" to plead guilty and consult with defense counsel, defendant was denied effective assistance of counsel because counsel failed to have "a second psych eval for sanity done where the first exam was an insufficient simple mental status exam," defense counsel was ineffective for failing to tell defendant about a possible insanity defense at trial, defendant was not criminally responsible for the crime, defense counsel failed to "adequately investigate the expert," and that at the time of the guilty plea defendant was "hearing voices and seeing demons."

¶ 10      Defendant attached several mental health evaluation documents to the amended *pro se* petition. The first exhibit was a document completed after an initial evaluation in January 2008, which recommended a mood stabilizer for defendant. The document noted that defendant had "anger problems" and was suicidal. On January 25, 2008, defendant was recommended for individual therapy and group therapy, in addition to medication for "PTSD chronic" and to "decrease anger and anxiety." In February 2008, defendant's mental health treatment plan indicated that defendant needed additional medication to "stabilize mood" and "reduce voices." On February 16, 2008, defendant was admitted to the mental health department for "smearing feces" in defendant's cell and stating that demons told defendant to smear feces in the cell and to self-harm. In a February diagnostic and treatment note, defendant was described as "alert, oriented, cooperative, anxious mood, sporadic eye contact, [and] easily engaged in

conversation." Defendant was put on crisis watch after tying a sheet to the cell vent "to use as a rope to hang himself."

¶ 11    In an April 2009 evaluation, defendant is described as alert, oriented, "good eye contact, appropriately dressed and groomed." In May 2009, a crisis intervention report stated that defendant had thoughts about "killing himself" and that defendant "says he will do it when he gets a chance." In an August 2009 mental health diagnostic and treatment note from IDOC, defendant was described as having bipolar disorder. IDOC put defendant on crisis watch on August 31, 2009.  Defendant was again on crisis watch from February 24, 2010, to March 3, 2010, and from April 16, 2010, to April 20, 2010. On June 21, 2010, defendant was put in restraints because of a self-inflicted wound to the right testicle. Defendant stated that, "he will continue until castrated." Defendant was put on crisis watch until June 23, 2010.

¶ 12    In December 2015, a hearing was held on defendant's motions. The court informed defendant that additional petitions could not be filed while defendant was represented by counsel. The following colloquy then took place:

> "THE COURT: You need to let me know what you wish me to do ***. I have
> appointed a very skilled attorney from [the public defender's] office who deals
> only with post-conviction petitions. She will represent you in this matter. It is up
> to you, however.
>
>      You are filing the motion asking that I dismiss her from representing you
> and further and you wish to represent yourself *pro se* on this. Is that what you
> wish to do, [defendant]?
>
> [DEFENDANT]: Yes, sir.
>
> THE COURT: Do you wish to represent yourself *pro se*?

[DEFENDANT]: Yes, ma'am.

***

THE COURT: [Defendant], you filed a petition in 2014, 2015, but I have not granted you leave to file any further petitions. And I know you're not – I don't know if you are aware of the law, [], but [appointed counsel] is. But you can't just file amended petitions when you see fit. I have to give you leave to do that. You already have a petition on file and the State is going to respond to it.

So first and foremost you are asking that I vacate the appointment of the public defender's office, and you wish to represent yourself *pro se* in this matter. And you thought carefully about that? That's what you wish to do?

[DEFENDANT]: Yes, your Honor.

THE COURT: [Counsel], your appointment is vacated. You do not need to represent the defendant any further in these post-conviction proceedings.

And again, I will ask you again, [defendant]: You have the benefit of counsel who knows how to handle these matters. You do not wish to have the benefit of counsel?

[DEFENDANT]: No, your Honor.

¶ 13    The trial court granted defendant's motion to proceed *pro se* and vacated its earlier appointment of the public defender.

¶ 14    Defendant then indicated that defendant wished to go forward with the amended petition that was filed with the motion to dismiss counsel. Defendant stated that counsel had said that the 2014 petition, raising constitutional challenges based on age, was meritless, but that counsel had stated she would be filing a Rule 651(c) certificate indicating that there was no need to amend

the petition. Defendant decided it would be better to go *pro se* than proceed on a petition that would lose. The trial court allowed defendant to withdraw the prior petitions, and granted defendant leave to file the amended petition.

¶ 15    In April 2016, the State filed a motion to dismiss the amended petition as both untimely and without merit. The State argued in part that defendant pled guilty on July 14, 2009, and did not subsequently file a motion to vacate the plea or a direct appeal. The State asserted that if a defendant does not file a direct appeal, the statute of limitations in which to file a postconviction motion is three years, and that defendant did not file any postconviction filings until 2015. Accordingly, the State asked the court to dismiss defendant's postconviction petition. Defendant filed a responsive pleading and a hearing was held on the State's motion to dismiss.

¶ 16    At the hearing, the State reiterated its arguments that defendant's postconviction petition was untimely and that it was without merit, as there was no indication that defendant was not fit to stand trial at the time defendant pled guilty. Defendant argued that the postconviction petition was timely because an issue relating to fitness can be raised at any time. Defendant claimed that poor insight, judgment, and impulse control led to defendant pleading guilty. Defendant relied on the exhibits attached to the petition to show that defendant was not fit. Defendant also claimed that the documents attached to the petition were only some of the documents that showcased defendant's mental state, and that if defendant had more time, more could be produced as evidence of defendant's mental state at the time of the guilty plea. The State responded that the statute defendant cited to regarding fitness to stand trial, plead, or be sentenced was not controlling, and that the only statute that could circumvent the statute of limitations for filing was an actual innocence claim.

¶ 17    The court then stated that it had heard the arguments and read the pleadings. It noted that defendant pled guilty on July 14, 2009, to the offense of attempt first degree murder, and had received a sentence of 12 years. The court continued:

"Subsequent to that, he did not take any appeal with regards to that sentence and conviction. He did not file any post –

[DEFENDANT]: Can I add one thing, your Honor, please?

THE COURT: I heard the arguments, [defendant]. I'm making my ruling. What is it that you need to add?

[DEFENDANT]: I would also ask for a fitness evaluation to ensure that I'm fit to represent myself.

THE COURT: That's denied. You're not entitled to that, [defendant]. You're choosing to represent yourself. I'm not sending you for a fitness evaluation.

You have filed pleadings. You have filed things, [defendant]. We're going to proceed with what you've filed."

¶ 18    The trial court then found defendant's petition untimely and should have been filed by July 14, 2012. The trial court then stated it would look to the merits of the petition even though it was untimely. It noted that there was nothing improper regarding the admonishments by the court pursuant to defendant's guilty plea. The court also found that defendant failed to show that counsel's performance fell below an objective standard of reasonableness, and that but for counsel's alleged errors, the result would have been different. The court stated that there was no basis to find that defendant would have been able to present an insanity defense. The court found that defendant was not entitled to an evidentiary hearing and granted the State's motion to dismiss. Defendant now appeals.

¶ 19                                    ANALYSIS

¶ 20     On appeal, defendant first contends that the circuit court erred by permitting defendant to proceed *pro se* without ensuring that defendant's waiver to the statutory right to counsel was both knowing and intelligent. The State responds that the trial court properly granted defendant's motion to dismiss counsel and proceed *pro se*.

¶ 21     The Act provides a method for an individual, subject to a criminal sentence, to challenge a conviction by alleging it was the result of a substantial denial of federal or state constitutional rights or both. *People v. Cotto*, 2016 IL 119006, ¶ 26. The Act sets out a three-stage process for adjudicating petitions. *Id*. At the first stage, the circuit court determines whether the petition is "frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2014). If the petition is not dismissed at first-stage proceedings, it advances to the second stage. *People v. Hommerson*, 2014 IL 115638, ¶ 7.

¶ 22     At the second stage, the court may appoint counsel to represent an indigent defendant, and counsel may amend the petition if necessary. 725 ILCS 5/122-4 (West 2014).  The State may then file a motion to dismiss the petition. *Id*. If the State does not file a motion to dismiss, or if the court denies the State's motion, the petition proceeds to the third stage and the court will conduct an evidentiary hearing on the merits of the petition. *Hommerson*, 2014 IL 115638, ¶ 8.

¶ 23     The Act affords indigent defendants the right to counsel beyond the first stage of proceedings.  725 ILCS 5/122-4 (West 2014). "[T]he intent of the Act is that, in the second and third stage of postconviction proceedings, defendants are afforded the advantages of representation. *People v. Lesley*, 2018 IL 122100, ¶ 33.

¶ 24     We note that there is no constitutional right to assistance of counsel during postconviction proceedings, and that "[t]he right to assistance of counsel in postconviction

8

proceedings is a matter of legislative grace, and a defendant is guaranteed only the level of assistance provided by the Post-Conviction Hearing Act." *People v. Hardin*, 217 Ill. 2d 289, 299 (2005). Our supreme court has determined that the Act provides a postconviction defendant with "reasonable" assistance. *Id*.

¶ 25 However, a defendant has a right to proceed *pro se* in postconviction proceedings. 725 ILCS 5/122-4 (West 2014). A defendant must "knowingly and intelligently relinquish his right to counsel," and his waiver "must be clear and unequivocal, not ambiguous." *People v. Baez*, 241 Ill. 2d 44, 115-16 (2011). "The requirement of a knowing and intelligent choice calls for nothing less than a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Lesley*, 2018 IL 122100, ¶ 51. The determination of whether there has been an intelligent waiver of the right to counsel depends upon the particular facts and circumstances of each case, including the background, experience, and conduct of the accused. *Id*. In determining whether the waiver was knowingly and understandably made, the entire record must be considered. *Id*. Although a court may consider a defendant's decision to represent himself unwise, if his decision is freely, knowingly, and intelligently made, it must be accepted. *Baez*, 241 Ill. 2d at 117. We review a trial court's determination for an abuse of discretion. *Id.* at 116.

¶ 26 In this case, defendant specifically filed a motion seeking to dismiss counsel and proceed *pro se*. In that motion, defendant also requested access to a certain law library that would allow defendant access to more law books. During a hearing on the motion, the trial court stated that it appointed "a very skilled attorney from [the public defender's] office who deals only with post-conviction petitions." The trial court stated that the attorney would represent defendant, but that it was up to defendant. The trial court then asked defendant if defendant wished to self-represent

and proceed *pro se*, to which defendant responded, "Yes." The trial court then asked defendant a second time if defendant wished to proceed *pro se*, to which defendant responded, "Yes." The trial court also stated that it did know whether defendant was aware of the law, "but [appointed counsel] is." The trial court continued, "So first and foremost you are asking that I vacate the appointment of the public defender's office, and you wish to represent yourself *pro se* in this matter. And you have thought carefully about that? That's what you wish to do?" Defendant again responded, "Yes, your Honor." The trial court vacated the appointment of counsel, stating, "And again, I will ask you again, ***. You do not wish to have the benefit of counsel?" Defendant replied, "No, your Honor."

¶ 27    This was certainly a clear, unequivocal waiver of counsel by defendant. The trial court asked defendant several times whether defendant wished to proceed *pro se*, and warned that defendant would be foregoing the benefit of "skilled" counsel who was specifically qualified to deal with postconviction petitions. Additionally, the record indicates that defendant was represented by counsel during defendant's guilty plea and had been involved in other cases while in prison. "A defendant who has been represented by an attorney for a period of time is more likely to understand the workings of the system than a defendant who first appears in court." *People v. Young*, 341 Ill. App. 3d 379, 387 (2003).

¶ 28    Defendant nevertheless contends that his waiver was not knowing and intelligent because defendant had not been apprised by the court of the specific requirements of Illinois Supreme Court 651(c) (eff. Jul. 1, 2017), which states that in a postconviction proceeding, the appellant or appellant's counsel shall, upon written request, be provided the postconviction report of proceedings and any relevant report of proceedings not previously provided to the appellant or appellant's counsel. It also states that the record filed in the court shall contain a showing that the

10

attorney had consulted with the petitioner "to ascertain his or her contentions of deprivation of constitutional rights, has examined the record of the proceedings at the trial, and has made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions." Ill. S. Ct. R. 651(c) (eff. Jul. 1, 2017). Defendant contends that without knowing the requirements of postconviction counsel, defendant could not have knowingly and intelligently waived the right to counsel. However, defendant has not cited to a single case, nor can we find one, that supports the contention that a trial court must apprise defendant of postconviction counsel's duties.

¶ 29    In fact, our supreme court addressed a similar issue in *Lesley*, where a defendant argued that he should have been apprised by the court of "the advantages of representation of counsel and the dangers and pitfalls of representing himself," in order to make a knowing and intelligent waiver of counsel. *Lesley*, 2018 IL 122100, ¶ 56. There, the trial court noted that the defendant had "not cited any law in support of the contention that such admonishments are required before a defendant waives counsel *** in postconviction proceedings." *Id*. Accordingly, we find that the record supports a finding that defendant knowingly and intelligently waived the right to counsel, and the trial court did not abuse its discretion in allowing defendant to proceed *pro se*.

¶ 30    Defendant's next contention is that the trial court erred when it denied defendant's request for a fitness evaluation. Specifically, defendant contends that when defendant asked for a fitness evaluation to determine if defendant was fit, after arguments had been made and while the trial court was making its ruling, the trial court should have ordered an evaluation.

¶ 31    A defendant is presumed to be fit to stand trial, to plead, and to be sentenced. 725 ILCS 5/104-10 (West 2014). A defendant is also presumed to be fit at the time of post-conviction proceedings. *People v. Johnson*, 191 Ill. 2d 257, 269 (2000). However, when a *bona fide* doubt

of a defendant's fitness to proceed with post-conviction proceedings is raised, the court may order a psychological evaluation of the defendant and consider the matter at an evidentiary hearing. *Id*. Because the trial court is in the best position to observe a defendant's conduct, whether a *bona fide* doubt of fitness to proceed exists is a matter that lies within the discretion of that court. *Id*. Moreover, because a presumption of fitness attaches at the outset of postconviction proceedings, "the court may require a substantial threshold showing of incompetence to establish a *bona fide* doubt as to a defendant's ability to consult with counsel." *Id*.

¶ 32     "The level of competency required during post-conviction proceedings is less than that required at trial." *Id*. A defendant is considered unfit to stand trial when, "because of his mental or physical condition, he is unable to understand the nature and purpose of the proceedings against him or to assist in his defense." 725 ILCS 5/104-10 (West 2014). "In contrast, a defendant is considered unfit to proceed with the post-conviction process when, because of a mental condition, he cannot communicate his allegations of constitutional deprivations to counsel, thus frustrating his entitlement under the Act, to a reasonable level of assistance." *Johnson*, 191 Ill. 2d at 269. Our supreme court explained:

> "The lower level of competency required at post-conviction proceedings, as opposed to trial, reflects a fundamental difference between the two proceedings. A post-conviction proceeding is not part of the criminal process. Rather, it is a collateral attack on the judgment of conviction and is civil in nature. Further, in proceedings under the Act, counsel is appointed not to shield a defendant from the 'prosecutorial forces' of the State, but to shape a defendant's claims into the appropriate legal form for presentation to the court. Accordingly, if a defendant is competent to communicate allegations of constitutional

violations to counsel, that defendant is competent to participate in post-conviction proceedings." *Id.* at 269-70.

¶ 33    In the case at bar, defendant raised the issue of fitness for the first time at the hearing on the State's motion to dismiss. It was not raised in defendant's amended postconviction petition. Prior to defendant being allowed to proceed *pro se*, defendant's counsel never raised an issue of fitness. While defendant attached several documents to the amended postconviction petition, dating from 2008 to 2010, defendant did not point to anything in those documents that raised a *bona fide* doubt as to defendant's ability to participate in postconviction proceedings, which were initiated in 2014. Looking at the entire record, defendant was very capable of communicating purported violations of constitutional rights to counsel and the court. "Because the trial court is in the best position to observe a defendant's conduct, whether a *bona fide* doubt of fitness to proceed exists is a matter that lies within the discretion of that court." *Id.* In this case, the trial court had ample opportunity to observe and interact with defendant, and we do not find that the trial court abused its discretion in finding that defendant failed to raise a *bona fide* doubt of fitness.

¶ 34    Defendant's final contention is that "by erroneously permitting [defendant] to proceed *pro se* without ensuring that [defendant] knowingly and intelligently waived counsel ***, and by arbitrarily and unreasonably denying [defendant's] request for an evaluation of [defendant's] fitness to [self-represent] ***, the circuit court deprived [defendant] of a fair and complete opportunity to establish that [defendant] was not culpably negligent." Because we find that defendant knowingly and intelligently waived the right to counsel, and that the trial court did not unreasonably deny defendant's request for a fitness evaluation, we need not address this issue.

¶ 35                              CONCLUSION

13

¶ 36    For the forgoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 37    Affirmed.